LOTTINGER, Judge.
This is an action in tort based upon trespass and unlawful seizure of property. Mr. Herman Fayette, one of the defendants herein, acquired a 1960 Nassau house-trailer on December 6, 1960, by paying the sum of $1,000.00 in cash and assuming the outstanding balance due on a chattel mortgage which affected said trailer, to the Community State Bank of Grandville, Michigan, hereinafter referred to simply as Community State Bank. On February 15, 1963, Mr. Fayette and his wife executed an agreement to buy or sell with the plaintiff, W. C. C., Inc., under the terms of which they agreed to sell this identical housetrailer and a metal building to W. C. C., Inc. for the price of $3,000.00 in cash and the assumption by W. C. C., Inc. of the chattel mortgage note held by the Community State Bank which affected the housetrailer. The agreement provided that the act of sale was to be passed before the purchaser’s notary within a reasonable length of time *609 after execution of the agreement to self Apparently on that same date, W. C. C., Inc. gave to Mr. Fayette its check made payable to his order in the amount of $3,000.00 and on March 16, 1963, Mr. Fayette purchased a house and lot from W. C. C., Inc., giving a down payment of $3,000.00 to the corporation and financing the balance thereof. The record shows that Mr. Fayette simply took the $3,000.00 check which had been given him by W. C. C., Inc. for his housetrailer, endorsed it and returned it to W. C. C., Inc. and this constituted the $3,000.00 down payment. On this date, Mr. Fayette occupied the house which he had purchased and delivered possession of the housetrailer to Mr. I. W. Sharp, Jr., the President of W. C. C, Inc. After W. C. C, Inc. obtained possession of the trailer, they rented it and attempted to sell it, going to the extent of negotiating seriously and coming to a tentative agreement with at least one prospective purchaser.
On August 14, 1963, Community State Bank addressed an “Assignment of Account” form to another of the defendants herein, Mr. W. Hardy Davis, wherein they requested that he perform the following:
“Please act as our agent in contacting Mr. Herman Fayette at 611 Columbus, Houma, Louisiana, in regard to the past due account which we hold in his name. You will note that Mr. Fayette advised us in his letter of May 20, that he had made some type of arrangements with a company calling themselves, W. C. C., Inc. in regard to this account. We have heard nothing from this company and we have been unable to reach anyone at the telephone number which is listed for this company. We have been advised by the dealer that the coach has been stripped and is in very poor condition. We would like if at all possible for Mr. Fayette to replace the stripped items and assume his responsibility for payment on this account. If you cannot make any arrangements with either Mr. Herman Fay-ette or with W. C. C., Inc. for paying the account in full or assuming the payments on this contract, then, of course, we would like the unit returned to the dealer’s lot. I do not believe we are interested in having payments assumed by W. C. C., Inc.. Please advise us of the results of your first contact with these parties in regard to this matter and we will mark our records accordingly.”
The record reflects that Mr. Davis, during the period in question, made his living as a contact agent for out of state finance companies and his principal function was to collect past due notes. The record shows that on May 17, 1963, W. C. C., Inc. had drawn a check to the order of Community State Bank in the amount of $172.56 which was negotiated by the bank, on March 16, 1963, they had drawn a check to the order of Community State Bank in the amount of $86.28, which was negotiated by said bank and on August 24, 1963, sent a certified check in the amount of $258.84 to the Community State Bank, which was returned by the Community State Bank on September 5, to Mr. Davis. In that letter of transmittal to Mr. Davis, he was instructed by Community State Bank to return the check to W. C. C., Iric. and to obtain a payoff of the chattel mortgage in full, plus late and collection fees, or to repossess the unit. On June 24, 1963, Community State Bank had addressed a letter to W. C. C., Inc. wherein they acknowledged having been advised that W. C. C., Inc. had arranged to take in trade the housetrailer in question. The letter went on to notify W. C. C., Inc. that the account was past due for the months of May and June, and to further state that they hoped that W. C. C., Inc. would be able to complete the resale of the unit within the next 15 days.
On September 9, 1963, Mr. Davis went to the office of W. C. C., Inc. in Houma and talked with Mrs. Melancon, Mr. Sharp’s secretary, in person, and at the same time, with Mr. Sharp over the telephone. Mr. Davis’s testimony is that he told Mr. Sharp he was going to return the last check which W. C. C., Inc. had issued to Community State Bank and that his instructions from *610 Community State Bank were to get from W. C. C., Inc. the entire balance due on the note. He said that he indicated to Mr. Sharp that in the absence of payment to him of the full balance due on the note, he intended to repossess the housetrailer.
On that same day, Mr. Davis went to the home of Mr. Fayette, and finding Mr. Fayette to be out at work, had Mrs. Fayette sign a “Release and Relief of Responsibility” wherein Mrs. Fayette released and delivered the housetrailer in question which, according to the form, was to be moved and held at the Houma Mobile Homes Sales lot in Houma for 2 weeks, pending payment of the account with the Community State Bank. After having obtained Mrs. Fay-ette’s signature on this form, Mr. Davis, together with an employee of Houma Mobile Home Sales, went to the location of the housetrailer, hooked it up to a trailer transporter and drove off with it, placing it on the premises of Houma Mobile Home Sales.
Thereafter, upon Mr. Fayette’s return from work, and on or prior to September 18, 1963, Mr. Davis obtained from Mr. Fayette the sum of $681.00, $431.00 of which he later transmitted to Community State Bank and $250.00 of which he retained as his “location and collection fee”.
In October of 1963, W. C. C., Inc. instituted this suit for damages for trespass and unlawful seizure of property, naming as defendants W. Hardy Davis, Community State Bank on Grandville, Michigan, and Herman Fayette. Fayette and Community State Bank filed an exception of vagueness and Community State Bank in addition filed an exception to the jurisdiction ratione personae. These exceptions were taken up and tried on January 9, 1964, and after argument, were overruled by the Trial Judge. Mr. Fayette filed an answer in the nature of a general denial, coupled with a reconventional demand against W. C. C., Inc., W. Hardy Davis and Community State Bank. W. Hardy Davis and the Community State Bank filed answers to the original petitions and the reconventional demand, and W. C. C., Inc. filed its answer to the reconventional demand.
The case was taken up and tried on its merits initially on April 13, 1964, and the trial was completed on June 29, 1964. June 16, 1965, the Trial Court rendered judgment in favor of W. C. C., Inc. and against W. Hardy Davis and the Community State Bank, jointly, severally, and in solido, in the amount of $5,893.00, and dismissed with prejudice the reconventional demand of Herman Fayette. W. Hardy Davis and Community State Bank suspensively appealed that judgment to this Court.
While counsel for appellants urges no specific assignments of error, our reading of his brief indicates that there are several, and we will deal with them in turn.
The first is that Mr. Davis was the agent of Community State Bank only for purposes of contacting Mr. Fayette in regard to his past due account, and that the Court erred in holding that Mr. Davis acted as agent for the Community State Bank at the time that he seized and took possession of the housetrailer. We understand the second assignment of error urged by appellants’ counsel to be a corollary of the first; that the Trial Court erred in not finding that Mr. Davis, at the time that he seized and took possession of the housetrailer, was acting as the agent of Mr. and Mrs. Fayette.
With reference to the first contention of appellant, we believe that the relationship of principal and agent between the Community State Bank and Mr. Davis was clearly established initially in Community State Bank’s communication to Mr. Davis of August 14, 1963 which is quoted above. We likewise believe that that relationship continued to exist as late as September 18, 1963, the date on which Mr. Davis addressed a letter of transmittal to the Community State Bank enclosing a portion of the money which he had collected from Mr. and Mrs. Fayette. We note also that on September 11, 1963, Mr. Davis addressed a letter to the plaintiff wherein he re *611 turned the certified check which had been previously sent to Community State Bank, and further informed them that the unit was presently in the care and custody of the Community State Bank, and signed that letter as “Finance Adjustor and Agent for Community State Bank”. Indeed, in examining the actions of Mr. Davis prior to and subsequent to the seizure of the trailer, we can come to no other conclusion but that reached by the Trial Judge, i. e., that Mr. Davis at all times was acting as agent for the Community State Bank.
With reference to appellants’ second apparent assignment of error, that is the failure of the Trial Court to find that Mr. Davis was acting as agent for the Fayettes at the time that he seized the trailer unlawfully, we find that neither the oral testimony nor the documentary evidence adduced at the time of the trial support this proposition. Mr. Davis took the position in his testimony, and counsel for appellants takes the position in his brief, that Mr. Davis acted as agent for the Community State Bank commencing with his initial communication from them asking him to look into the situation with reference to the past due notes on the trailer which had been owned by Fayette. Appellants contend that Davis continued in this capacity as agent for the Community State Bank until a brief period on September 9 when Mr. Davis had Mrs. Fayette sign the ■“Release and Relief of Responsibility”, and that for the brief period after the signature of Mrs. Fayette on that instrument, extending through the time later in the day when Mr. Davis actually seized the housetrailer he continued to be the agent of Mr. and Mrs. Fayette. Then, obviously the alleged agency relationship between Mr. Davis and the Fayettes must have terminated very shortly thereafter, as Mr. Davis, within a period of two days thereafter, addressed a letter to the plaintiff, and informed them that he had taken possession of the trailer, signing that communication as agent for the Community State Bank. After this letter was addressed on September 11, 1963, Davis went to the Fayettes and collected from them the sum of $681.00 as agent for the Community State Bank, retained $250.00 of that money as a fee for himself for having made the collection, and transmitted the balance to the Community State Bank, to be applied toward reduction of the chattel mortgage note. By virtue of this argument, appellants in substance seek to have us make the determination that the responsibility for the wrongful seizure is the Fayettes, rather than the responsibility of the Community State Bank. The validity of this argument is in no wise supported by the record.
Appellants argue that Mr. Fayette’s action in taking possession of the trailer at the lot of Houma Mobile Home Sales, where it had been left by Davis in moving it to his house, as well as having paid the sum of $681.00 to Davis for collection charges and note payments constituted a ratification of the “Release and Relief of Responsibility” form signed by Mrs. Fay-ette. At the time that Fayette picked up the trailer and, paid the notes, the wrongful seizure had, for several days, been an accomplished fact. It seems to us that this argument only relates to any possible claim which Davis and/or Community State Bank may have had against Mr. and/or Mrs. Fayette and serve no relation to the principal demand of the plaintiff as against Davis and Community State Bank. We also note that while Mr. and Mrs. Fayette made Davis and Community State Bank third party defendants, Davis and Community State Bank took no such action with reference to Mr. and Mrs. Fayette, therefore any claim which they may have against Mr. and Mrs. Fayette is not a matter for discussion in this appeal. In addition, it appears that this argument, on the part of appellants, presupposes that the housetrailer was in truth and in fact, the property of Mr. and Mrs. Fayette, rather than the plaintiff. This presumption is unwarranted.
Another apparent assignment of error by the appellant is that the Court erred in finding that W. C. C., Inc. in fact *612 was the owner of the housetrailer seized by Mr. Davis, and in not finding that the legal ownership thereof was still vested in Mr. and Mrs. Fayette. We believe that the jurisprudence of this State clearly does not require that the actual certificate of title to a vehicle be transferred in order for the sale to be a valid one. In the case of Whitten v. Travelers Insurance Company, La. App., 141 So.2d 40 the Second Circuit held that the registration of sale of a motor vehicle was an administrative proceeding that did not bear any essential relationship to the contract of sales of motor vehicles. We believe this to be correct. LSA-C.C. Art. 2456 provides:
“The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.”
This is the law with reference to the sale of movable property which we believe clearly applies in this instance. Here, the price had not only been agreed upon, but had been paid, and delivery had been accomplished. There was no requirement left unfulfilled in order to constitute a valid sale of the housetrailer between Fayette and W. C. C., Inc. As a further consideration, we note that in Community State Bank’s initial communication to Davis they take cognizance of some form of conveyance or arrangement between Fayette and W. C. C., Inc. W. C. C., Inc., sent a total 'of three checks to Community State Bank for payments on the chattel mortgage note prior to the time that the seizure was made. On June 24, 1963, Community State Bank addressed a letter to the plaintiff wherein they acknowledged that they had been informed of the fact that W. C. C., Inc. had purchased the trailer formerly owned by the Fayettes. We believe the law as well as the facts clearly charged Community State Bank with the knowledge that W. C. C., Inc. had in truth and in fact purchased the Fayette’s housetrailer.
Appellants urge, alternatively, in the event that the other assignments of error are not maintained by this Court, that the quantum of damages awarded by the Trial Court is excessive, and should be reduced. The Trial Judge awarded plaintiff the sum of $4500.00 for the loss of its housetrailer, the sum of $157.00 to compensate it for certain repairs made to the housetrailer after the purchase and prior to the time that it was unlawfully seized by the defendants, and the sum of $261.00 for three months of rent on the housetrailer which were lost by the plaintiff. We believe that the record supports the $4500.00 award for the loss of the trailer. There is testimony in the record from the President of W. C. C., Inc. and from Mr. J. L. Mc-Michael to the effect that Mr. McMichael had negotiated with W. C. C., Inc., shortly prior to the seizure of the housetrailer, and had, in substance, agreed to pay W. C. C., Inc. the sum of $5,200.00 for the trailer. The record also reflects that W. C. C., Inc. paid Mr. Fayette, the sum of $3,000.00 in cash for his equity and assumed the balance due on the housetrailer, which, when added to the payment for the equity, was far in excess of the amount awarded by the Trial Judge for the value of the house-trailer. The record also supports the expenditure of the sum of $157.00 by the plaintiff toward the repair of the trailer after its acquisition, as well as the loss of rental totaling $261.00.
Appellants also complained of the award by the Trial Judge to the plaintiff of the sum of $725.00 for the loss of a portable aluminum building attached to the trailer, and which was allegedly destroyed by the appellants at the time that they moved the trailer. Mr. Sharp of W. C. C., Inc. testified that he paid $1,000.00 for the building, and that after it was destroyed by the defendants, he was able to sell it for only $275.00 and the Trial Judge apparent *613 ly used the difference between the purchase price of the building and the figure which the plaintiff received for it as the basis for the award of $725.00. During the course of the trial, when counsel for plaintiff attempted to elicit, from Mr. Sharp and other witnesses for the plaintiff, testimony with reference to the value of the aluminum building attached to the trailer, counsel • for appellants objected on the ground that the loss of or damage to the building had not been pleaded in plaintiff’s petition. The Trial Judge overruled these objections and permitted the testimony to be placed in the record. On August 25, 1964, after the conclusion of the trial on the merits, plaintiff, with leave of Court, filed a supplemental and amending petition wherein it prayed for the same total amount of damages as was prayed for in the original petition, but in which the itemization of damages was changed to the extent that the value of the trailer pleaded was diminished from $6,000.00 in the original petition to $5,000.00, and the damage and loss of the aluminum building was included as an item of damages, and a $1,000.00 value fixed on it. Plaintiff’s original petition itemizes the damages as: 1. Loss of rent. 2. Embarrassment, humiliation and damage to credit. 3. Damage for unlawful entry and 4. Value of the trailer. The supplemental and amending petition contains the above mentioned four items of damage plus the damage to the portable aluminum building. We believe that the Trial Judge was in error in making an award to the plaintiff for the loss of a building when loss of that building was not prayed for in the original petition, when opposing counsel timely objected to the introduction of any evidence in connection with the loss thereof at the time of the trial, and when the original petition was not amended prior to or during the course of the trial so as to include and pray for loss of or damage to the said building. The filing of a supplemental and amending petition after the completion of the trial on the merits is insufficient to cure this defect. Accordingly, we hold that the award by the Trial Court to the plaintiff of the sum of $725.00 for the loss of the portable aluminum building was improper.
Appellants urge that the award by the Trial Judge of the sum of $100.00 to the plaintiff for the embarrassment, humiliation and damage to credit occasioned by the seizure was excessive. Our examination of the records and circumstances surrounding this seizure indicates that this award is proper and correct.
Accordingly, the judgment of the Trial Court is amended to the extent that the quantum of damages is reduced to $5,168.00, and as amended, is affirmed.
Judgment affirmed.