259 So.2d 391 (1972)
Jessie Aaron SCOTT, Sr., et al., Plaintiffs-Appellants,
v.
The CONTINENTAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 11776.
Court of Appeal of Louisiana, Second Circuit.
February 29, 1972.
*392 James B. Wells, Bossier City, Love, Rigby, Dehan & Love, by Samuel P. Love, Jr., Shreveport, for Jessie Aaron Scott, Sr., plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley, by Charles W. Salley, Shreveport, for Continental Ins. Co. and L. C. Evans, defendants-appellees.
Cook, Clark, Egan, Yancey & King, by Gordon E. Rountree, Shreveport, for Aetna Casualty and Surety Co., defendant-appellee.
Charles E. Welsh, Bossier City, curator ad hoc for Rickey J. Deese, defendant-appellee.
Blanchard, Walker, O'Quin & Roberts, by Wilton H. Williams, Jr., Shreveport, for Hanover Ins. Co., defendant-appellee.
James D. Southerland, Plain Dealing, curator ad hoc for Bill C. Dickerson, defendant-appellee.
Before AYRES, PRICE, and HEARD, JJ.
AYRES, Judge.
This is an action by a father and mother for damages for the death of their minor son, Donald Gene Scott, who died from injuries *393 he sustained in an accident on November 24, 1969, when Rickey J. Deese, the driver of a 1955 model Chevrolet in which young Scott was a guest passenger, lost control of the automobile, and it overturned several times.
Made defendant in their original petition was The Continental Insurance Company, an alleged insurer of the automobile involved asserted therein to be the property of L. C. Evans. In an amended petition, plaintiffs caused these parties to be made additional defendants: Evans, alleged owner of the car; Rickey J. Deese, driver of the car; Myrtle C. Deese, an aunt of the driver; and The Aetna Casualty and Surety Company, insurer of a 1967 model Plymouth automobile under a policy issued to Myrtle C. Deese. Coverage under the latter policy was alleged to have resulted from the claim that Rickey J. Deese was Myrtle Deese's nephew and a member of her household, and the Chevrolet, being a nonowned automobile, was covered under the provisions of Aetna's policy when operated by Rickey J. Deese.
In a second amended petition, named also as further additional defendants were Bill C. Dickerson, father of Randy C. Dickerson, another guest passenger in the Chevrolet, and Dickerson's insurer, The Hanover Insurance Company, which allegedly afforded coverage under the uninsured-motorist provisions of its policy. Liability is sought because it is claimed Dickerson's minor son, Randy, negligently pushed or shoved the driver of the vehicle, causing the driver to lose control.
To petitioners' action, Aetna and Continental filed separate motions for summary judgments based on the lack of coverage and protection under their respective insurance policies. These motions were sustained and plaintiffs' demands as against these defendants were rejected. From the judgment rendered, only plaintiff Jessie Aaron Scott, Sr., appealed.
The automobile involved in the accident with which we are now concerned was formerly owned by L. C. Evans. During the period of Evans' ownership, defendant Continental issued a public liability policy to Evans designating him as the named insured. The policy had an effective coverage period from March 5, 1969, to March 5, 1970. The accident upon which this litigation is predicated occurred on November 24, 1969. In the meantime, during August, 1969, Evans sold the automobile to Rickey J. Deese for a consideration of $350, payable in weekly installments of $50 each. The car, at the time of the sale, was delivered to Deese, who continued in possession thereafter to the date of the accident. Deese paid $250 on the purchase price, leaving a balance due thereon of only $100 at the time of the accident. These facts as to the reality of the sale and the delivery of the car are established by the testimony of both Evans and Deese. There is no evidence in contradiction.
Moreover, plaintiff-appellant admits in brief the sale of the car and its delivery by Evans to Deese, but contends that the sale was without effect because Deese was a minor and no formal title had issued. Accordingly, it was contended Evans continued as the owner of the car and that, on the occasion of the accident, Deese's status was that of a borrower or user of the car with the permission of the owner. Under such status, it is contended Deese was an insured under appropriate language of the policy issued by Continental to Evans.
These contentions will be considered in reverse order.
LSA-C.C. Art. 2456 provides, with reference to the completion or perfection of a sale:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
*394 The provisions of the Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq., do not supersede the aforesaid provisions of the Civil Code nor render the sale of a motor vehicle void because of noncompliance with the statute.
The rule appears now well settled in this State that titles to motor vehicles, though imperfect, may be transferred between parties in accordance with the provisions of the Civil Code quoted above, even though there has been no compliance with the Vehicle Certificate of Title Law as the enactment of the law regulating the certificate of title to motor vehicles did not have the effect of repealing the provisions of the Civil Code having reference to the consummation of sales of motor vehicles between parties to such transactions. Whitten v. Travelers Insurance Company, 141 So.2d 40 (La.App., 2d Cir. 1962); Luke v. Theriot, 195 So.2d 685, 690 (La.App., 1st Cir. 1967).
The registration of sales of motor vehicles under the Vehicle Certificate of Title Law is an administrative proceeding which does not bear any essential relationship to contracts of sale of motor vehicles. Transportation Equipment Co. v. Dabdoub, 69 So.2d 640 (La.App., Orl. 1954writs denied). Consequently, failure to comply with the administrative regulations prescribed by the statute with respect to the sale of motor vehicles does not invalidate sales consummated under the aforesaid codal provisions. Hamner v. Domingue, 82 So.2d 105 (La.App., 1st Cir. 1955writs denied); Bedsole v. Lee, 78 So.2d 434 (La.App., 1st Cir. 1955). In this regard, we had occasion to observe in Whitten v. Travelers Insurance Company, supra, 141 So.2d 40, 42:
"The Vehicle Certificate of Title Law clearly does not make the sale of a motor vehicle void if the transfer is not executed in conformity with that statute. The statute does not directly nor by implication repeal the aforesaid codal provisions. Hence, title to motor vehicles, although imperfect, may be transferred as between the parties in accordance with the aforesaid codal authority, even though the purchaser has not complied with the Vehicle Certificate of Title Law."
See, also: General Finance Corp. of New Orleans v. Harrell, 188 So.2d 211 (La. App., 1st Cir. 1966); W. C. C., Inc. v. Davis, 185 So.2d 607 (La.App., 1st Cir. 1966writs refused, 249 La. 484, 187 So.2d 450).
Nor do we find any merit in plaintiff's first contention. Public liability insurance constitutes a personal contract between the insurer and the named insured and on behalf of others specifically provided for, entered into on a basis of certain representations between the parties. Obviously, the contract may not be assigned or transferred without the consent, permission, and approval of both contracting parties. Luke v. Theriot, supra.
Nor is there any merit in appellant's contention that the sale of the automobile by Evans to Deese is ipso facto, by Deese's minority, null and void. Such a contract is not absolutely null and void but just relatively null, which may be urged only by the minor or his representative. It is provided in LSA-C.C. Art. 1785 that, in cases where a minor is incapacitated from contracting, his contracts may be rendered valid by ratification either expressed or implied. Moreover, under LSA-C.C. Art. 1791, persons who have treated with a minor or other incapacitated persons cannot plead the nullity of the agreement, if it is sought to be enforced by the party, when his disability shall have ceased, or by those who legally administer the rights of such incapacitated persons during their disabilities.
Under a similar state of facts, in Harris v. Ward, 224 So.2d 517 (La.App., 2d Cir. 1969), this court dealt with the question of a sale to a minor. There, appellant's position *395 was that the sale was null until such time as it was ratified by the minor, which was not done in that instance. Appellee contended the sale was a relative nullity and the right to disavow or to set the sale aside was a personal right which could only be asserted by the minor or by someone on his behalf. There, as here, the minor had not attacked the sale. There we concluded, after reviewing pertinent provisions of the Civil Code and judicial pronouncements, that, whereas an action of nullity or of rescission of agreements entered into with a minor may be annulled within certain delays after he reached his majority, or that they may be ratified and enforced, it necessarily followed that such transactions were not absolutely null and void but were only relatively null. There we stated:
"We believe the tenor running through the articles, cases and various commentaries is that the contracts of minors, although susceptible to annulment by the minor or his representative, nevertheless create certain legal effects binding on the party contracting with the minor as well as persons who are strangers to the immediate transaction. In other words, minority is a cloak or a weapon only in the hands of the minor or his representative which is available for his own protection and, so long as the agreement or contract has not been disavowed or annulled, it has the same effect as the contract of a person fully capable of contracting.
"We conclude the sale of the automobile from Lawrence to Ward, an unemancipated minor, was a relative nullity; that the right to urge the invalidity of the contract was personal to the minor; that, since the minor neither claimed its invalidity nor ratified it, the sale may not be held invalid as to the plaintiff who was neither a party to the contract nor an assignee of the rights of the minor."
224 So.2d 517, 521-522.
Hence, Rickey J. Deese, as a purchaser of the automobile, was afforded no insurance coverage under and by virtue of Continental's policy issued to Evans.
Appellant's claim of liability on the part of Aetna is predicated upon Aetna's policy insuring a Plymouth automobile owned by Myrtle C. Deese. As an alleged member of Mrs. Deese's household, it is claimed that Rickey J. Deese was an insured under that policy, and that the accident occurred by the use of a nonowned automobile which was thus covered under the provisions reading as follows:
"Persons insured
"The following are Insureds under Part I: . . .
"(b) with respect to a non-owned automobile,
"(1) the named Insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer,
provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and * * *."
These provisions of the policy are inappropriate and afford no protection to plaintiffs for the reasons, as heretofore held, that the automobile driven by Rickey J. Deese was not a nonowned automobile but was his own property; and, second, we conclude, from the evidence, that Rickey J. Deese was not a member of the household of Myrtle C. Deese. In the "Definitions" section of the Aetna policy, defining "relative" and a "non-owned automobile," "`relative' *396 means a relative of the named Insured who is a resident of the same household;" "`non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named Insured or any relative, other than a temporary substitute automobile."
Thus, for there to be coverage for Rickey J. Deese under the Aetna policy, he must have been residing with Myrtle C. Deese in the same household at the time of the accident. Mrs. Deese was Rickey's aunt by marriage. After Rickey's father's death and the remarriage of his mother, the Juvenile Court in and for Caddo Parish, Louisiana, by order of court, took custody of Rickey. He was placed in the home of Mrs. Deese when about 12 years of age and remained there until he graduated from high school in May, 1969. Thereafter, following a trip to Texas, he moved into the home of plaintiffs and paid board. He worked at the Ordnance Plant and supported himself. He lived with plaintiffs until after the accident when he went to reside with a brother in Texas. He had not lived with Mrs. Deese since the closing of school; nor had he lived with her during the five months preceding the accident.
Whether a person is or is not a resident of a particular place is a question of law and fact to be determined from all the facts of each particular case. From the facts exhaustively detailed in this record, the trial court concluded, and we are in accord therewith, that Rickey J. Deese was not a resident of the household of Mrs. Myrtle C. Deese and, hence, was not an insured under her automobile policy. That policy would not have afforded him protection had the automobile been a nonowned automobile.
Hence, we find no error in the judgment appealed. It is accordingly affirmed at plaintiff-appellant's costs.
Affirmed.