CHEHARDY, Judge.
Plaintiff-appellee, David Chambers, III, sues United Cab Company and Thomas C. Moody for property damages and physical injuries that he sustained as a result of an accident involving plaintiff and Moody, a driver employed by the United Cab Company, on April 21, 1977.
After a trial without jury, judgment was rendered in favor of Chambers and against United Cab Company and Thomas C. Moody, in solido, for the following:
General damages $4,000.00
Medical expenses 1,125.25
Damage to automobile 1,051.00
Loss of use of automobile 300.00
Total $6,476.25
with interest from judicial demand and all costs of the proceedings.
In his reasons for judgment, the trial judge denied recovery for car rental be *1301 cause he said he did not believe the plaintiff had paid this sum; but he allowed loss of use of his vehicle for a period of time in which it reasonably should have been repaired. He added that in the absence of an explanation for the extended delay, he allowed loss of use for 30 days at $10 per day.
At the trial on the merits Chambers testified that, although the vehicle he was driving at the time of the accident was registered to his mother for insurance purposes, he was the owner of the vehicle and had purchased it himself. He also testified that he was employed at the time of the accident, making approximately $1,000 per month, although he was living at home with his widowed mother and his brothers and sisters.
No evidence contrary to the above was presented by the defendants.
In regard to the damage and subsequent repairs made to the vehicle he was driving, plaintiff testified that the steering wheel was shaking and making a lot of noise and it was not usable at night because the lights would not open up. He also testified he sometimes used the damaged car during the day for work and that for a while there was another car available to him which belonged to a friend of his mother’s. This friend later demanded the return of her vehicle, he further testified, and on August 9, 1977 he took the damaged car out to Bailey Lincoln-Mercury, where Moody had asked him to take it for the repairs. Chambers also testified that the car then remained at Bailey until December 21, 1977. From August 9 to December 21, plaintiff would call Bailey periodically, but would be advised that they did not have the parts yet.
When the car was finally repaired, Bailey Lincoln-Mercury presented him with a bill for $1,000. Chambers testified that he borrowed the money to pay for the repairs to his car from a homestead and offered as proof a cancelled promissory note for $1,129.32. Other than this testimony by plaintiff and the cancelled note, no other evidence was offered to prove the extent of physical damages to the car or the amount of dollar damages. The defendants presented no contradictory evidence.
Plaintiff testified that on the advice of Moody he rented a car from a relative when his attempts to rent a car from several commercial establishments were without success. Although the plaintiff testified that he paid rent to his cousin for the use of an automobile, the trial judge in his reasons for judgment stated that he did not believe plaintiff paid any sum for car rental.
The issues presented in this case are:
1. Did the trial court err in finding ' that the plaintiff had standing to recover for property damage to a vehicle which he testified that he had bought and paid for, and was, indeed, the owner of, in spite of the fact that the vehicle at the time of the accident was registered to his now-deceased mother?
2. Did the trial court err in finding that the damages to the automobile in question amounted to the sum of $1,051?
3. Did the trial court err in awarding $300 for loss of use of the vehicle?
In the case of Ford Motor Credit Company v. Soileau, 323 So.2d 221, 223 (La.App.3d Cir. 1975), the court said: “We recognize that the Certificate of Title is not conclusive proof of ownership, and that proof showing different ownership is admissible.”
The court in Scott v. Continental Insurance Company, 259 So.2d 391, 394 (La.App.2d Cir. 1972), stated:
“The registration of sales of motor vehicles under the Vehicle Certificate of Title Law is an administrative proceeding which does not bear any essential relationship to contracts of sale of motor vehicles. Transportation Equipment Co. v. Dabdoub, 69 So.2d 640 (La.App., Orl. 1954—writs denied). Consequently, failure to comply with the administrative regulations prescribed by the statute with respect to the sale of motor vehicles does not invalidate sales consummated under the aforesaid codal provisions. Hamner v. Domingue, 82 So.2d 105 (La.App., 1st Cir. 1955—writs denied); Bedsole v. Lee, 78 So.2d 434 (La.App., 1st Cir. 1955). In this regard, we had occasion to observe in *1302 Whitten v. Travelers Insurance Company, supra, 141 So.2d 40, 42 [La.App.]:
‘The Vehicle Certifícate of Title Law clearly does not make the sale of a motor vehicle void if the transfer is not executed in conformity with that statute. * * *
Appellants argue that there was no documentary evidence to establish Chambers as owner of the vehicle. A review of the record bears this out; however, plaintiff testified that he was the owner of the vehicle, that he had paid for it himself, that he was working and had an income of approximately $1,000 a month at the time of the accident, and that the vehicle had been registered in his mother’s name solely to reduce his insurance premiums.
Chambers also produced a cancelled note at the trial, of which he was the sole signer, and he also testified that the loan represented by this note was made for payment of the repairs on this particular vehicle.
The trial court was not in error in deciding that Chambers was the actual owner of the vehicle, and, therefore, had procedural capacity to recover for the damages to it. There is not that manifest error needed to disturb the trial court’s finding. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The defendants’ next contention is that the trial court erred in finding that damage to the automobile amounted to $1,051. They argue that there were no photographs of the damage presented at trial, no invoice from a repair service, no estimates, nor were there presented any cancelled checks evidencing payment to a repair service. Furthermore, defendants argue that the plaintiff failed to present any evidence regarding the nature of the damages sustained by the vehicle or establishing the quantum of those damages.
The trial court, obviously, did not agree. One of the plaintiff’s exhibits was, as noted previously, a cancelled' note representing money borrowed to pay for the repairs. The- plaintiff also testified that the exact amount of the repair bill was $1,051, the amount of the judgment awarded for the damages. Moreover, at the trial the defendants produced absolutely no evidence to contradict the plaintiff’s testimony regarding the connection between the note and the repairs. Finally, plaintiff testified that he had had the damage appraised at Louisiana Auto Appraisal at Moody’s request, and io is therefore not unfair to presume that defendant, through Moody, had knowledge of the amount of the repair appraisal and would have cross-examined plaintiff on this point if that appraisal were lower.
We find that the record does furnish a reasonable factual basis for the district court’s finding that plaintiff is entitled to damages for repairs to his automobile in the amount of $1,051.
Defendants also argue that the trial court’s allowance of $300 for loss of use of ■ the plaintiff’s car was error because the record is totally devoid of any evidence upon which to ground its conclusion.
In regard to the issue of compensation for loss of use of property, the court said in Chriss v. Manchester Insurance & Indemnity Co., 308 So.2d 803, 806 (La.App.4th Cir. 1975):
“The normal measure of damages for loss of use is the rental value of similar property and perhaps necessary incidental expenses. It is not necessary, however, that a plaintiff actually rent substitute property in order to recover damages due for loss of use. Rental (which accomplishes the substitution of the use of similar property for that of the injured property) does not determine entitlement to damages, but only provides a fair measure of damages in appropriate cases.”
The appellants on the other hand cite two other cases in support of their argument. In Sherwood v. American Ry. Express Co., 158 La. 43, 103 So. 436, 438 (1925), the Court stated:
“The little to be added to the foregoing is that article 1935, R.C.C., cited above, is not entirely applicable. Certainly it is applicable from the time when plaintiff’s automobile should or might have been repaired. ■ But it was then, and then only, *1303 that plaintiff’s right ceased as to damages other than interest on the amount due; for ‘where through an injury to property, plaintiff is temporarily deprived of its use, the measure of his damages is the amount of the injury to the property together with the value of its use during the time required by the exercise of proper diligence to secure its repair,’ 17 Corpus Juris, p. 878, § 184, note 28. Such is the rule in other jurisdictions, and we think it is no different in this. See Reisz v. Kansas City Southern R. Co., 148 La. 929, 88 So. 120, citing, inter alia, 8 Ruling Case Law, 493.
“But we have searched the record in vain for any evidence as to how long it would have required to repair plaintiff’s automobile, and since we cannot notice judicially the time which would be required for that purpose, we are constrained to refuse plaintiff an increase, and must let the judgment stand.”
Although the plaintiff in the above case was denied recovery for loss of use of his vehicle, that casé is distinguishable on the facts from the present case. In Sherwood, supra, the car had not yet been taken for repair at the time of trial, nor was there any estimate presented regarding the time which would be required for the needed repairs. In the present case, however, plaintiff had already had the car repaired; moreover, he testified that it took not one month but more than four months (from the time the car was actually taken to the repair establishment in August, 1977 until the release of the car in December, 1977) to have the repairs completed.
The defendants also cite the case of Holleman v. Viola, 330 So.2d 627, 629 (La.App.4th Cir. 1976), which stated:
“The period of compensatory loss of use. is the time required to have the damaged property repaired when due diligence is exerted. See Chriss v. Manchester Insurance & Indemnity Co., 308 So.2d 803 (La.App.4th Cir. 1976). In the instant case the evidence establishes the plaintiff did all that could be reasonably expected to complete the repairs as expeditiously as possible.”
In the Supreme Court’s recent decision of Reck v. Stevens, 373 So.2d 498 (1979), the Court said that the initial inquiry of an appellate court on the issue of quantum must always be directed at whether the trial court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s “much” discretion or “great discretion” in the award of damages as established by LSA-C.C. art. 1934(3).
In his Reasons for Judgment, the trial judge stated:
“I do not believe plaintiff paid any sum for car rental and is entitled only for loss of use of his vehicle for a period of time in which it reasonably should have been repaired. In the absence of explanation for the extended delay, I allow loss of use for 30 days at $10.00 per day.”
We can find no such abuse of this discretion on the part of the trial court’s award for loss of use of Chambers’ vehicle.
Accordingly, the trial court’s judgment is affirmed in all respects, appellants to pay all costs of this appeal.

AFFIRMED.