**STATE ex rel. WALL v. COVERDALE, Sheriff.**

**No. 5181.**

Court of Appeal of Louisiana. Second Circuit.

April 30, 1937.

Rehearing Denied June 1, 1937.

Writ of Certiorari and Review Denied July 9, 1937.

Dhu Thompson, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

TALIAFERRO, Judge.

Relator seeks mandamus to compel the sheriff of Ouachita parish to execute and deliver to him, as adjudicatee, deed conveying lot 4 of square 3, Heard & Wallace addition to West Monroe, fronting 55 feet on Cypress street and 145 feet on Travis street. The sheriff declined to execute the desired deed for the reason that relator's bid, though two-thirds of the appraised value of the property, was not sufficient to discharge liens and privileges against the lot which, according to mortgage certificates furnished him by the recorder of mortgages, he contends, were superior in rank to that under which the sale was provoked. Before answering, respondent filed exceptions of nonjoinder and of no cause or right of action. The proceeding being summary, trial of the case on its merits was had subject to the exceptions. In support of the exception of nonjoinder, it is urged that the owners of the unsatisfied liens and encumbrances against the lot, as disclosed from the mortgage certificate, and the recorder of mortgages of Ouachita parish, were indispensable parties to the rule. The trial court did not pass on either exception. Relator's demands were rejected and he brings this appeal.

We think there is merit in the exception of nonjoinder, but as we are clearly of the opinion that plaintiff's cause is not well founded in law and that the judgment of the court a quo is correct, we shall address our attention to the case on its merits and finally dispose of it.

The record and admissions in briefs disclose the following undisputed facts perti-

nent to the issue presented by the pleadings:

In the year 1927, the city of West Monroe, in keeping with the power granted by Act No. 147 of the General Assembly of 1902, as amended, initiated an extensive program for the construction of sidewalks therein and, after compliance with the terms of said act, constructed a sidewalk on Cypress street abutting the property of Heard & Wallace, above described. The total cost of the improvement was $44.00, 20 per cent. of which was paid in cash and the balance of $35.20 was made payable over a period of five years. Legal evidence of the completion of the improvement, its acceptance, and levying of assessment against the lot to preserve the lien securing payment of the cost were all seasonably recorded in the mortgage records of Ouachita parish. Section 4 of Act No. 147 of 1902 declares that said lien "shall be the first privilege [against the property] over all other claims except taxes," and shall affect third persons from the date of registry of the assessment in the mortgage records.

Also, in the year 1928, the city of West Monroe caused many of its streets to be paved, pursuant to the provisions of Act No. 168 of 1926, including Travis street, abutting the Heard & Wallace lot, the cost of which was $705.71, and the evidence of the lien established by that act was timely inscribed in the mortgage records to preserve the security for payment of the paving cost. This inscription, however, was subsequent in date to the registry of the lien securing payment of the balance due on the cost of sidewalk construction. Section 7 of Act No. 168 of 1926, inter alia, provides that the registry of a copy of the ordinance accepting street paving done and making of assessments therefor against abutting real estate, within ten days of its adoption, in the mortgage records of the parish, "shall operate as a lien and privilege in favor of the said municipality or its transferees against the property therein assessed, which lien and privilege shall outrank and prime all other liens, privileges, encumbrances and claims except taxes."

No further payment was made on the cost of the sidewalk construction and the city foreclosed the lien and secured judgment for the amount thereof. The property was seized by the sheriff and sold with benefit of appraisement. Relator became the purchaser, paid to the sheriff the amount of his bid, and demanded a deed, which was refused.

The sole issue in the case therefore is whether the paving lien, though subsequent in date and registry, primes that securing payment for the cost of the sidewalk.

The preference rank of sidewalk cost liens is fixed by section 4 of Act No. 147 of 1902. That section has to no extent been modified or changed by Act No. 49 of 1912, Act No. 16 of 1922, or Act No. 322 of 1926, which, in succession, amend and re-enact section 1 of the 1902 act. This section 1, originally and now, grants authority, under named conditions, to certain municipalities to pave, plank, gravel, macadamize, and otherwise improve sidewalks and curbs within their limits, and permits the levy and collection of taxes or local assessments on the abutting real estate to pay the cost of such improvement. This section, as it originally read and as amended, does not seek to any extent to grant a lien to secure the payment of said construction cost nor to fix any right of preference or privilege which the city or other owner of a sidewalk improvement lien, as regards the abutting land, should have over other claimants or encumbrance holders. And section 7 of Act No. 168 of 1926, which definitely fixes the rank of street paving liens, as regards abutting property, is not affected by Act No. 206 of 1928 which only amends and re-enacts section 1 of the 1926 act. This section, originally and as amended, is practically of the same purport and substance, as regards street paving, as is section 1 of the 1902 act, as amended, as regards sidewalk construction. In many respects the provisions of the two acts, as a whole, are virtually the same. Therefore the rank of the liens involved in this action must be determined from a construction of the two sections of these acts as and when originally adopted.

It will not be questioned that the Legislature was competent to adopt a law embracing the subject-matter contained in Act No. 147 of 1902, nor that it was vested with plenary power to rank the lien therein provided, as was done. On such subject its authority is only restricted, if at all, by the organic law of the state. Conceding this authority, it follows then as a natural consequence that the Legislature was vested with equal power to repeal such a law in its entirety or modify any or all of its provisions. Such could be accomplished by specific statutory declaration or implied-

ly by the enactment of a law or laws directly in conflict therewith. As regards the rank of these liens, section 7 of the 1926 act is directly in conflict with those of the 1902 act. Such liens cannot possibly prime each other, and we are certain they are not concurrent in rank. The power of the Legislature to pass the 1926 act was co-equal with its power to adopt the act of 1902. Where their provisions are repugnant, the first enactment must yield to the later one. Civil Code, Art. 23. All persons are presumed to know the law. One acquiring sidewalk construction certificates, secured by the lien provided for in the 1902 act, will be held to have knowledge that it was legally possible that the rank of his security could be superseded by a lien securing payment of the cost of paving adjacent to the same property, subsequently laid. Both acts were in effect when the sidewalk was constructed. The subsequent paving of Travis street adjacent to the lot in the manner it was done had the same effect on the lien securing payment of the cost of constructing the sidewalk as the lien securing payment of sidewalk cost would have had on a conventional mortgage against the property recorded after the effective date of the 1902 act, but before the construction of the sidewalk.

A proper ranking of liens is not necessarily determined by the order or dates of registry. They are stricti juris; arise, are construed, and have effect as to substance and rank, strictly in keeping with the law establishing them. This rule, with extreme clarity, is laid down by the court in Central Savings Bank & Trust Company v. Tucker, 182 La. 289, 290, 161 So. 759, 761. There was involved in that case the rank of two paving liens against a corner lot, arising and registered at different dates. We certified the case to and asked for instructions from the Supreme Court. It was held that the liens ranked concurrently. The court therein said:

"Mortgages, either conventional or judicial mortgages, take rank in the order in which they are recorded; but liens, unlike mortgages, are ranked in the order fixed by the statutes creating them. It is declared in article 3273 of the Civil Code that privileges (meaning liens) are valid against third persons from the date of the recording of the act, or evidence of indebtedness, as provided by law. That means merely that a lien shall not affect the rights of third persons unless it is recorded in the method provided by law. It does not mean that when two or more liens have been recorded as provided by law they shall take rank in the order of date or time in which they were recorded."

Under the plain prohibition of article 684 of the Code of Practice, the sheriff was without right to execute relator a deed to the property adjudicated to him; and, for the reasons herein assigned, the judgment appealed from is affirmed with costs.