COVINGTON, Judge:
This is an appeal from a judgment ranking the collateral mortgage of the First National Bank of Port Allen after the vendor’s privilege and lien of the plaintiff, Joseph I. Lessard. We affirm.
This suit arises out of the interpretation to be placed upon an instrument dated October 30, 1969, entitled “Sale with Assumption of Mortgage and Retention of Second Mortgage,” by which the plaintiff, Joseph I. Lessard, sold to Lessard Acres, Inc., one of the defendants herein, 100 lots situated in the East Half of the Northeast Quarter of Section 22, Township 9 South, Range 3 East, Southeastern District of Louisiana, in the Parish of Ascension, State of Louisiana, of record in Mortgage Book 182, page 3, and duly recorded on October 30, 1969.
The stated consideration was “(A) The price of $35,000.00 payable as follows:
“(1) Buyer has paid in cash, receipt of which is hereby acknowledged by the Seller, the sum of $1,000.00;
“(2) For $3,517.93, Buyer has executed its note, hereinafter described, for the payment of which Seller retains a vendor’s lien and mortgage as hereinafter described;
“(3) For the remainder of said $35,000.00, namely the sum of $30,482.07, Buyer assumes and agrees to hold the Seller, free and harmless from the payment of the balance due on the following described notes: (1) That certain promissory note made and executed by Joseph I. Lessard to the order of Myself, dated September 27, 1967, in the principal sum of $22,000.00, stipulating to bear interest at the rate of 7% per annum, which note was paraphed “Ne Varietur” by Penrose C. St. Amant, Notary Public, for identification with an Act of Collateral Mortgage passed before him of even date therewith, which mortgage rests upon the property herein conveyed and recorded in the office of the Clerk and Recorder of Mortgages of Ascension Parish, Louisiana, in MOB 165, Folio 321, the Buyer herein assuming all of the obligations imposed on the Seller in the said note and the said mortgage; (2) That certain promissory note made and executed by Joseph I. Lessard, to the order of Myself, dated January 27,1967, in the principal sum of $6,800.00, stipulting (sic) to bear interest at the rate of 7% per annum, which note was paraphed “Ne Var-ietur” by Penrose C. St. Amant, Notary Public, for identification with an Act of Collateral Mortgage passed before him of even date therewith, which mortgages rests upon the property therein mortgged (sic), and recorded in the office of the Clerk and Recorder of Mortgages of Ascension Parish, Louisiana, in MOB 159, Folio 381 the Buyer herein assuming all of the obligations imposed on the Seller in the said note and the said mortgage. (3) That certain promissory note made and executed by Joseph I. Les-sard, to the order of Myself, dated January 27, 1967, in the principal sum of $7,000.00, stipulating interest at the rate of 7% per annum, which note was paraphed “Ne Var-ietur” by Penrose C. St. Amant, Notary Public, for identification with an Act of Collateral Mortgage passed before him of even date therewith, which mortgage rests upon the property therein mortgaged, and recorded in the office of the Clerk and Recorder of Mortgages of Ascension Parish, Louisiana, in MOB 168, folio 885, the buyer assuming all of the obligations imposed on the Seller in said note and the said mortgage.
“(B) Performance by Buyer of the following acts at no cost to Seller:
“(1) Erect five (5) foot high chain link fence around oxidation pond and water wells.
“(2) When first ten (10) houses in subdivision are complete, Buyer shall drill water supply well of sufficient capability to furnish water needs for 200 single family residences. Buyer to supply all equipment for water distribution to all lots conveyed here *353 in, including, but not limited to pump, reservoir, and water distribution lines. All of these facilities are to meet the approval of state and parish health department authorities. Upon installation of all these water supply and distribution facilities, title shall, ipso facto, and without further acts or documents, vest in Lessard Acres, Water and Sewer Works, Inc.
“(3) Blacktopping of any new subdivision streets to meet Ascension Parish Police Jury requirements.
“(4) Furnish all utilities to each lot in the subdivision, including, but not limited to, sewerage collection lines, electricity, natural gas (if needed), electricity, water.
“(5) Any additional improvements to the subdivision undertaken by Buyer shall be at its expenses.
“(6) All of the water distribution and supply system, and sewerage collection and disposal system, shall be owned and maintained by Lessard Acres Water & Sewer Works, Inc., which is owned by Seller.
“(7) Buyer agrees to erect houses upon all subdivision lots as soon as sound business judgment dictates. As each house and lot is sold, $500.00 of the proceeds shall be paid to the Bank of Gonzales for the reduction of the principal balance due upon the two mortgages assumed by Buyer hereinabove. These $500.00 payments are to be in addition to the regular monthly installments due and payable on the two mortgages and are to be made to secure a release from the Bank of Gonzales mortgage and the second mortgage retained by Seller herein. Seller agrees to sign a release on each lot sold, upon payment by Buyer of the $500.00 to the Bank of Gonzales. No payment to Seller shall be due on the second mortgage retained herein until the entire balance due on the two mortgages assumed hereinabove has been paid and cancelled.
“Seller agrees that by signing a release on each lot sold hereafter that he does additionally release said lot from any and all the provisions of this agreement, including but not limited to any resolutory condition, vendor’s lien, mortgage, etc.
“(8) All sales of lots out of the subdivision shall be with reservation of ten (10) foot servitudes for public utility purposes, installation and maintenance of water and sewer lines by Seller’s corporation, as shown on survey map.
“(C) As an additional consideration of the consideration of the conveyance herein, Seller does hereby grant to Buyer the exclusive right or option to purchase the following described property:
A certain tract of land situated in the Parish of Ascension in the East Half of the Northeast Quarter of Section 22, Township 9 South, Range 3 East, Southeastern District of Louisiana, and being more particularly described and designated as all that land of Seller lying west of Lots Thirty (30) through Forty-eight (48) as shown on the map of survey by Toxie Craft, C.E., dated July 8, 1968, revised September 4, 1969, attached hereto and made part hereof,
for a term of five (5) years from date. Purchase price for the optioned property to be the completion by Buyer, at his expense, of the following acts upon the optioned property:
“(1) Installation of all streets, lighting, water lines, sewerage collection lines, electricity, or gas distribution system and additional oxidation pond (if necessary), prior to end of the five (5) year option period. After the service lines and streets are installed, the lots shall become the property of Lessard Acres, Inc., upon execution of an Act of Sale by Seller herein, which said Act of Sale Seller binds and obligates himself to execute once the aforementioned service lines, streets, etc. are installed without payment or further consideration.
“(2) Title to all water and sewer lines to be vested in Lessard Acres Water and Sewer Works, Inc.
“At the end of five (5) years from this date, if all one hundred (100) lots described on page one hereof are not sold, and all the mortgages mentioned herein on the property herein conveyed are not paid in full, then all lots remaining unsold by Buyer herein will revert in full ownership to Seller, ipso *354 facto, and without any further act or action on the part of Seller or Buyer herein, and without cost to Seller herein. If for any reason this reverter paragraph is held null and void and unenforceable, then Buyer herein agrees to pay to Seller herein the sum of $500.00 per lot remaining unsold.
“For payment of the hereinabove mentioned $3,517.93, Buyer had made and executed his one certain promissory note to the order of Myself, endorsed in blank, payable at the Bank of Gonzales, payable after the two Bank of Gonzales mortgages are paid out, at the rate of $500.00 per lot sold, upon execution of release by Seller, stipulating to bear interest at the rate of 7% per annum from date.”
On December 14, 1970, Lessard Acres, Inc., executed a collateral mortgage in the sum of $40,000.00 in favor of the First National Bank of Port Allen, affecting the property described above.
Subsequently, this suit was filed on February 10, 1975, the plaintiff alleging that more than five years had elapsed since the date of the act of sale, that Lessard Acres, Inc. had failed to pay the notes which it had assumed, had failed to make the improvements required by the act of sale, and had failed to sell any of the lots. Plaintiff prayed for enforcement of the reverter clause and recognition as owner of the property free and clear of the bank’s mortgage. Alternatively, plaintiff prayed that he be awarded the sum of $500.00 per unsold lot as provided for in the instrument, said sums to outrank the bank’s mortgage as a vendor’s lien and privilege. By supplemental petition, plaintiff sought damages against Lessard Acres, Inc. for nonperformance of the improvements and for the amount which plaintiff had had to pay on the assumed mortgages.
Lessard Acres, Inc. failed to answer and a default judgment was taken against it. The bank answered, asserting the invalidity of the reverter clause, seeking recognition of the validity of its collateral mortgage, and further filed a third party demand against Lessard Acres, Inc. for the balance of $31,059.56 due on the mortgage, together with interest, attorney’s fees and costs.
The trial court, after hearing the evidence at the trial, found that the reverter clause of the act of sale was invalid. The court further found that the agreement of the buyer to pay the seller the sum of $500.00 for each of the unsold lots was a part of the consideration for the sale to the buyer, Lessard Acres, Inc. The court also held that the collateral mortgage of the bank was valid. The court considered that the issue to be decided was primarily one of the ranking of privileges affecting the property in question.
After due consideration, the trial court ranked the claims as follows: First, the collateral mortgage executed by Joseph I. Lessard to Bank of Gonzales, dated September 27, 1967, recorded Mortgage Book 165, page 321, on November 3, 1967, in the sum of $22,000.00; second, the vendor’s Jien and privilege and mortgage executed by Les-sard Acres, Inc. in favor of Joseph I. Les-sard, dated October 30, 1969, recorded on October 30, 1969, in the sum of $3,517.93; third, the vendor’s lien and privilege in the sum of $500.00 per lot for a total of $50,-000.00 created in favor of Joseph I. Lessard by the terms of the act of sale to Lessard Acres, Inc., dated October 30,1969, recorded Mortgage Book 182, page 3, on October 30, 1969; fourth, the collateral mortgage executed by Lessard Acres, Inc. in favor of the First National Bank of Port Allen, dated December 14, 1970, recorded Mortgage Book 189, page 392, in the sum of $40,-000.00.
The bank has appealed the judgment ranking the collateral mortgage of the First National Bank of Port Allen after the vendor’s lien and privilege of Joseph I. Lessard.
The trial court having found the reverter clause invalid and the appellant having not raised the issue of validity of the reverter clause before this Court, we are not called upon to review that ruling of the trial court.
The main issue is the question of the effect to be accorded the clause in the instrument which reads: “If for any reason *355 this reverter paragraph is held null and void and unenforceable, then Buyer herein agrees to pay to Seller herein the sum of $500.00 per lot remaining unsold.”
Appellant contends that this clause is a provision for liquidated damages, which must be sued for and reduced to judgment before it can be considered as a mortgage, lien or privilege against the property. Ap-pellee contends that this clause constitutes part of the consideration for the sale, so that the sum of $50,000.00 for the 100 lots should be ranked as a vendor’s lien and privilege, priming the subsequent mortgage of the bank.
The crucial issue involved in this case is whether the parties to the act of sale intended that the above clause by which the buyer agreed to pay the seller $500.00 for each unsold lot if the reverter clause was invalid be a part of the purchase price and therefore effect a vendor’s lien and privilege, or whether it was intended to stipulate the amount of liquidated damages to be paid for non-performance from breach of covenants agreed to by the buyer.
The trial court viewed the clause as part of the consideration for the sale, effecting a vendor’s lien and privilege on the property, and expressed the opinion that:
“The act of sale clearly contemplates that plaintiff would receive back all unsold lots or the sum of $500.00 per lot. This was a part of the consideration for the act of sale, was so stated in the act of sale, and was spread upon the public records giving notice to all subsequent creditors. No one contends that Lessard Acres, Inc., could escape its obligation to pay plaintiff the sum of $500.00 per lot. Certainly the rights of the bank as a mortgage creditor of Lessard Acres, Inc. can rise no higher than the rights of Lessard Acres, Inc-., acquired in the act of sale to it, and must necessarily be subject to the obligations of Lessard Acres, Inc., as set forth in the act of sale and recorded on the face of the public records. The bank has notice of the claims to which the title of Lessard Acres, Inc., was subject and necessarily took its mortgage subject to those claims.”
It is elementary that until the buyer pays the purchase price he holds by a defeasible title only, and all who deal with him are equally affected. See Shapiro v. Kimbrough, 20 So.2d 24, 28 (La.App. 1st Cir. 1944). The vendor’s privilege is preserved and perfected against a third person when it is recorded, and it primes subsequent mortgages affecting the property. LSA-C.C. arts. 3251, 3274.
The general rule, as quoted in State v. Coverdale, 175 So. 492 (La.App. 2nd Cir. 1937), is:
“Mortgages, either conventional or judicial mortgages, take rank in the order in which they are recorded . .
In the instant case the act of sale preserving the vendor’s lien and privilege to Joseph I. Lessard, the vendor, was recorded on October 30, 1969. The bank’s mortgage was not recorded until December, 1970. Thus, it is obvious that the vendor’s privilege of Lessard primes the bank’s mortgage if the questioned paragraph was a part of the purchase price.
In discussing the purchase price of a sale, the court in Hibernia Bank & Trust Co. v. McCall Bros. Planting & Mfg. Co., 140 La. 763, 73 So. 857, 858 (1917), said:
“In that sense the price is the sum of money which the purchaser has obligated himself to pay for the property bought. . And we see no reason why the vendor and purchaser may not agree that the price shall be a certain percentage more if the vendor has to sue to collect it than if the purchaser pays without a lawsuit. All that the Civil Code requires in that respect is that the price must be fixed and determined by the parties to the sale . .
The Hibernia Bank case stands for the proposition that an obligation to pay a certain percentage as an attorney’s fee in the event it should become necessary to resort to legal proceedings or to employ an attorney to collect the amount of a promissory note representing the purchase price of *356 property, although only a conditional obligation, is a part of the debt or price or consideration of the sale, and is secured by the vendor’s lien and privilege on the property whenever the conditional obligation to pay the attorney’s fee becomes absolute.
In the instant case we find that the questioned clause provided for a conditional obligation to pay an additional sum of $500.00 per lot remaining unsold at the end of five years if the reverter clause was unenforceable. When the conditional obligation became absolute, it was secured by the vendor’s privilege as of the date of recordation of the act of sale.
In addition to its contention that the questioned clause merely provided for liquidated damages, the appellant offers the policy argument that: “An affirmation of this clause as a vendor’s lien would do violence to commercial transactions because, henceforth, no lending institution could safely lend money to a vendee who was a party to such an act of sale for the simple reason that they would have no practical security interest in the property by reason of the so-called ‘vendor’s lien’ which would prime any conventional mortgage even though duly recorded by the lender. Hence, contractors and developers would encounter much difficulty in securing funds with which to operate, thus unduly burdening commerce.” We find no merit in the appellant’s policy argument. The particular instrument was spread on the public records for all the world to see. In fact, the evidence shows that the bank in this case was aware of the particular instrument. The bank could easily have protected itself by requiring the vendor to waive his vendor’s lien or subordinate his vendor’s lien to the bank’s mortgage, and to relinquish his right to dissolve the sale. See, e. g., Sliman v. McBee, 311 So.2d 248 (La.1975). The bank had notice of the claims to which the title of Lessard Acres, Inc., its mortgagor, was subject, and necessarily the bank took its mortgage subject to these claims.
For the foregoing reasons we affirm. All costs of this appeal to be paid by appellant.
AFFIRMED.