349 So.2d 293 (1977)
Joesph I. LESSARD
v.
LESSARD ACRES, INC. and First National Bank of Port Allen.
No. 59173.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*294 Ralph Tureau, Law Offices of Ralph Tureau, Gonzales, for plaintiff-respondent.
Mary Olive Pierson, Beychok, Cooper & Pierson, Baton Rouge, for defendant-applicant.
SUMMERS, Justice.
This suit was instituted to enforce a reverter clause in an act of sale of real estate in Ascension Parish, or, alternatively, to rank mortgages and vendor's liens affecting the following property:
A certain tract of land situated in the parish of Ascension in the East Half of the Northeast Quarter of Section 22, Township 9 South, Range 3 East, Southeastern District of Louisiana, and being more particularly shown and designated as Lot Numbers Thirty (30) through One Hundred Thirty-Eight (138) on map of survey by Toxie Craft, C.E., dated July 8, 1968, revised September 4, 1969, attached hereto and made part hereof, LESS AND EXCEPT Lot Numbers 50, 63, 64, 69, 70, 95, 96, 101 and 102, all as is more fully shown by reference to said map.
On October 30, 1969, by instrument entitled "Sale With Assumption of Mortgage and Retention of Second Mortgage" plaintiff Joseph I. Lessard sold to Lessard Acres, Inc., 100 lots of ground in a plan of subdivision located in Ascension Parish. The instrument recited that it was a sale and conveyance made and accepted for the following consideration:
"(A) The price of $35,000.00 . . ." represented by $1,000 cash, a vendor's lien and mortgage note for $3,517.93, and the assumption by Lessard Acres, Inc., the buyer, of all obligations on three mortgage notes executed by seller Joseph I. Lessard totalling $30,482.07; referred to as 1) a mortgage note in the principal sum of $22,000 dated September 27, 1967; 2) a mortgage note in the principal sum of $6,800, dated January 27, 1967, and 3) a mortgage note in the principal sum of $7,000, dated January 27, 1967.
"(B) Performance by Buyer of the following acts at no cost to Seller . . . ." Here eight stipulations require the buyer to 1) erect a chain link fence around an oxidation pond and water well; 2) after ten houses were completed, buyer was to drill water wells capable of furnishing water to 200 residences with distribution facilities to all lots; upon installation these facilities would vest in Lessard Acres, Water and Sewerage Works, Inc.; 3) blacktop streets; 4) furnish utilities to each lot; 5) pay all expenses for other improvements to the subdivision; 6) permit the water and sewerage system to be maintained by Lessard Acres Water and Sewerage Works, Inc., a company owned by seller; 7) erect houses on all lots as soon as sound business judgment dictates, and apply $500 of each sale price to reduction of the mortgage obligations assumed by buyer; and 8) provide in each sale of lots that a ten-foot servitude is to be reserved for water and sewer lines.
*295 "(C) As an additional consideration. . ." for the conveyance the seller granted the buyer a five-year option to purchase additional property nearby if the buyer would complete street and utility facilities on the optioned property within five years, title to which would vest in Lessard Acres Water and Sewer Works, Inc., when the option was exercised.
Following the foregoing stipulations, the act of sales recites:
"At the end of five (5) years from this date, if all one hundred (100) lots described on page one hereof are not sold, and all the mortgages mentioned herein on the property herein conveyed are not paid in full, then all lots remaining unsold by Buyer herein will revert in full ownership to Seller, ipso facto, and without any further act or action on the part of Seller or Buyer, herein, and without cost to Seller herein. If for any reason this reverter paragraph is held null and void and unenforceable, then Buyer herein agrees to pay to Seller herein the sum of $500.00 per lot remaining unsold."
The above-quoted paragraph is followed by a description of the $3,517.93 promissory note referred to under (A) as part consideration of the sale.
Thereafter on December 14, 1970, Lessard Acres, Inc., executed a collateral mortgage in the sum of $40,000 in favor of the First National Bank of Port Allen affecting the lots acquired from Joseph I. Lessard in the deed of October 30, 1969.
When Lessard Acres, Inc., failed to pay the notes which it assumed, or to make the improvements required under the terms of the act of sale, or to sell any of the lots, Joseph I. Lessard discharged the balance due on the two mortgages of January 27, 1967, in the amounts of $6,800 and $7,000, respectively. After paying the mortgages, Joseph I. Lessard caused them to be cancelled on the public records.
This suit was filed by Joseph I. Lessard on February 10, 1975, making Lessard Acres, Inc., and the First National Bank of Port Allen defendants. He alleged that the five-year term allowed for compliance with the terms of the sale had expired and prayed for enforcement of the reverter clause and to be recognized as the owner of the lots free and clear of the mortgage in favor of the First National Bank of Port Allen. In the alternative he prayed that he be awarded $500 per unsold lot ($50,000) "as provided for and agreed" in the "Sale with Assumption of Mortgage and Retention of Second Mortgage."
The bank answered, asserting the invalidity of the reverter clause, seeking recognition of its mortgage, and, in a third party demand, asserted its claim for $31,059.56 with interest, costs and attorney's feesthe balance due on its collateral mortgage note against Lessard Acres, Inc., and its officers.
Lessard Acres failed to answer and a default judgment was confirmed against it on June 5, 1975 in favor of Joseph I. Lessard. That judgment decreed that, insofar as Lessard Acres, Inc., was concerned, Joseph I. Lessard was the owner of the 100 lots described in the sale of October 30, 1969.
In an amended and supplemental petition filed on September 5, 1975 Joseph I. Lessard amended his alternative demand to allege that his claim for $500 per lot ($50,000) against Lessard Acres, Inc., should be ranked ahead of and in preference to the mortgage of the bank. In the further alternative he prayed for damages against Lessard Acres, Inc., in the sum of $100,000, the cost of installing the facilities required in the act of sale. He sought to have the award outrank the bank's mortgage; and, in addition, he prayed that the mortgages assumed and not paid by Lessard Acres, Inc., which he discharged and cancelled, be adjudged to outrank the mortgage of the bank. The bank denied the validity of all claims asserted in the amended petition.
In this posture the case was tried. Except for establishing the costs of installing the facilities in the subdivision, the suit is primarily based upon the documents referred to, all of which are part of the public records of Ascension Parish.
*296 The trial judge held that reverter clauses were not valid in Louisiana. He was of the opinion that the Civil Code does recognize the resolutory condition, but it cannot be invoked to defeat the rights of subsequent creditors. The question at the trial was primarily one of ranking the claims against the 100 lots described in the sale of October 30, 1969.
Finding that the uncancelled mortgage of $22,000 dated September 27, 1967 and the vendor's lien and mortgage note of $3,517.93 dated October 30, 1969 were clearly entitled to preference, the trial judge ranked them first and second, respectively. However, the trial judge refused to recognize or reinstate the two mortgages assumed by Lessard Acres, Inc., which were not paid, and which Joseph I. Lessard was compelled to pay as the original obligor, because they had been cancelled from the public records. The trial judge was aware of no principle of law which would permit those two mortgages to be reinstated on the public records so as to prime the bank's mortgage.
The trial judge also held that the principal issue involved the effect to be given to this clause: "If for any reason this reverter paragraph is held null and void and unenforceable, then Buyer herein agrees to pay to Seller herein the sum of $500.00 per lot remaining unsold." He then held that the sum of $50,000 for the 100 unsold lots was entitled to be classified and ranked as a vendor's lien effective from the date of the sale on October 30, 1969, thus priming the bank's mortgage subsequently recorded on December 14, 1970. Judgment was rendered accordingly. On appeal to the First Circuit the judgment was affirmed. La.App., 340 So.2d 351. Certiorari was granted February 18, 1977. La., 342 So.2d 673. We affirm.
The act of sale clearly contemplates that plaintiff would either be entitled to the return of the title to the unsold lots after five years or to receive the sum of $500 for each unsold lot. This condition was positioned with the other considerations for the sale in the act of October 30, 1969 and was spread upon the public records giving notice to all subsequent creditors.
Inasmuch as the reverter of title clause is invalid and cannot be invoked to defeat the rights of subsequent creditors, Joseph I. Lessard cannot avail himself of this stipulation. He is therefore left with his alternative claim to have the $50,000 due him for the 100 unsold lots recognized to be entitled to the vendor's lien and privilege retained by him to secure the payment of the purchase price.
The bank takes the position that the stipulation requiring the purchaser to pay the seller $500 for each unsold lot is not part of the purchase price and is not therefore entitled to the rank of a vendor's lien and privilege. The stipulation is, instead, the bank argues, a provision for liquidated damages for nonperformance of the obligations of the contract. As such, the amount cannot be considered due until suit is filed and the claim is reduced to an award by judgment of court. Therefore, because the claim for liquidated damages has not been reduced to judgment, the bank's mortgage should bear a superior rank to the $50,000 claim. The bank's mortgage would, therefore, rank after the promissory note for $3,517.93 executed contemporaneously with act of sale and mortgage to secure part of the purchase price or consideration. The bank's argument is founded upon the premise that $500 per lot is not part of the price of the sale. In our view the $50,000 due the seller is part of the purchase price and as such it is entitled to the rank of a vendor's lien and privilege. La.Civil Code art. 3249.
In Hibernia Bank & Trust Company v. McCall Brothers Planting and Manufacturing Company, 140 La. 763, 73 So. 857 (1917), this Court had occasion to decide whether a vendor's lien applies to and secures the ten percent attorneys' fees stipulated in a promissory note given as the part of the purchase price in a credit sale. While the facts are distinguishable from the facts in the instant case, the principle announced is applicable.
*297 We held there that an obligation to pay a certain percentage as an attorney's fee in the event it should become necessary to resort to legal proceedings or to employ an attorney to collect the amount of a promissory note representing the purchase price, although only a conditional obligation, was part of the debt or price or consideration of the sale. It was therefore secured by the vendor's lien and privilege on the property whenever the conditional obligation to pay the attorney's fees become absolute.
We see no reason why the vendor and purchaser may not agree that the price shall be an additional amount if the purchaser fails to sell the lots or otherwise comply with the obligations imposed upon the buyer. All that the Civil Code requires in that respect is that the price must be fixed and determined by the parties to the sale. La.Civil Code art. 2464.
While Article 2464 requires that the price be certain, and the price in the act of sale may have varied according to the number of lots unsold at the end of five years, the amount was readily determinable, on the basis of $500 per unsold lot. That which may be made certain is certain. Thus to be certain "[I]t suffices that the price be determinable by means of a direct relation with the elements, not depending upon the will of the parties." Planiol: Traite Elementaire De Droit Civil, Vol. 2-Part 1, No. 1378.
The stipulation of the act of sale in question also satisfies the other elements of the price requirement of Article 2464 of the Civil Code: It consists of a sum of money and the amount is serious, and it is not out of proportion with the value of the lots conveyed.
Further, the bank argues that as a matter of policy granting the $50,000 due the seller a vendor's lien and privilege would do violence to commercial transactions. While such a stipulation may unduly encumber the immovable affected and deter lenders who would otherwise make advances for improving the property, the stipulation is valid and enforceable and falls within the ambit of the broad freedom our law confers upon contracting parties. Prospective lenders would be guided by the public records in such cases.
By its very terms the act of sale provides that the property conveyed could not be sold, alienated or encumbered to the prejudice of the mortgage retained by the seller to secure the purchase price. No one contends that Lessard Acres, Inc., could escape its obligation to pay plaintiff the sum of $500 per lot. Certainly the rights of the bank as mortgage creditor of Lessard Acres, Inc., can rise no higher than the rights which Lessard Acres, Inc., acquired in the act of sale. The bank's mortgage must therefore be subject to the obligations of Lessard Acres, Inc., as set forth in the sale, which they were bound to notice on the public records.
For the reasons assigned, the judgment appealed from is affirmed.
TATE, J., dissents and assigns reasons.
DIXON and CALOGERO, JJ., dissent.
TATE, Justice, dissenting.
I respectfully dissent.
The issue is whether a bank mortgage is primed by a $500 per lot penalty provided for in an instrument executed between a seller and a buyer of a 100-lot tract. The seller contends that the $500-per-lot penalty is part of the purchase price, entitling him to a vendor's lien which primes the bank's mortgage.

(1)
To understand the penalty clause's purpose, it is important to consider the instrument as a whole. The purchase price is unequivocally shown to be $35,000 (which does not include the $500 per lot penalty figure). The price represents primarily a small cash payment and the assumption of three mortgages totaling some $30,000.
As a further part of the consideration, the buyer also agreed to perform certain acts, without cost to the seller. See Appendix A. These acts involve the construction *298 of a water and sewerage distribution system, to be owned by a company owned by the seller, and prompt construction and sale of a large number of residences in the subdivision sold (within five years after the sale).
The instrument as a whole, including considerations, reflects the intent of the seller as ascribed by the parties to the sale: The seller divested himself of the property at a low price in order to obtain (at the buyer's expense) ownership of a water and utility service, with assured customers represented by the purchasers of the 100 lots. He desired to do so, without at the same time obligating himself with the payment of the mortgages on the property.
The meaning and purpose of the clause[1] at issue must be interpreted in the light of the intent of the contract as a whole. Civil Code Articles 1948, 1949, 1950, 1955.
This clause provides that, at the end of five years, if all 100 lots were not sold, "all lots remaining unsold by Buyer will revert in full ownership to Seller, ipso facto." If this reversion provision were held invalid (as all parties concede it is), "the Buyer agrees to pay the Seller herein the sum of $500 per lot remaining unsold."
The $500 per lot is obviously not part of the purchase price for the lots. It is only a penalty, in lieu of the reversion of the unsold lots to the seller.
The purpose of the clause is not to assure additional compensation for the lots to the seller. It is rather to provide a sanction against the buyer, should he fail to sell 100 lots (to accomplish his obligation to do so (see Appendix A) as part of the consideration for the sale at low price).
This purpose of the clause can more readily be seen by positing as fact the contemplated contractual scheme by which the buyer successfully enforced the reverter to him of all lots unsold at the end of five years (i. e., the underlying contractual obligation sought to be enforced alternatively by the $500 per lot penalty provided by the clause). In such case, although the buyer would still owe the entire (low) purchase price, he would nevertheless lose to the seller the unsold lots because he did not comply with his additional agreement, as part of the consideration for the sale (in addition to the price paid), that he re-sell these lots within the five year period. (To repeat, the contractual intent reflected by the requirement for this re-sale of the residential lots by the buyer within that period, is to furnish customers to the seller's utility system, a principal cause reflected by the contract for sale of the property by the seller to the buyer.)
Thus, the $500 per lot figure provided by the clause is a penalty for failure to re-sell such lots within the five years required by the contract. It is not part of the purchase price.
The penalty is a personal obligation of the buyer independent of the debt for the purchase price. The penalty, not being part of the purchase price, is not secured by the vendor's lien in the seller's favor. It thus does not prime the bank's mortgage.
I therefore respectfully dissent from our affirming the previous courts' decisions, which ranked the $500 per lot penalty owed by the buyer to the seller as superior to the bank's mortgage for $40,000. The effect of our judgment is to permit the seller, to the prejudice of a third person with a recorded mortgage, to recover $50,000 additional to the purchase price stated as secured by the mortgage and vendor's lien by the contract of sale.

(2)
The majority's reliance upon Hibernia Bank & Trust v. McCall Bros., 140 La. 763, *299 73 So. 857 (1917), is misplaced. There, the attorney's fees as stipulated in a promissory note were held to be secured by the vendor's lien. We, however, there specifically noted that the consideration for the sale included "that the purchaser should pay the amount stated in the note, and the interest thereon, and, in the event [of suit for collection] * * *, then that the purchaser should also pay ten percent as attorney's fees." 140 La. 766, 73 So. 858. (Italics mine.)
Therefore, we concluded, since the "obligation to pay conventional interest forms part of the debt on which it has accrued, * * * [w]e see no reason why the same rule should not apply to an obligation to pay an additional sum or percentage as an attorney's fee, when it is stipulated as a part of the consideration for which the property is sold." 140 La. 766, 73 So. 858. (Italics mine.)
In the present case, however, the $500 per lot penalty is not stipulated to be a part of the purchase price. Instead, the purchase "price" is specifically stated to be $35,000, payable as described.
The sales instrument concludes that "in order to secure the full and final payment of the unpaid purchase price, represented as aforesaid [by the note], together with all costs, including attorney's fees, Buyer grants and Seller retains a special mortgage with vendor's lien and privilege on the property sold in favor of Seller and any further holder of the note, or any part thereof, until the note shall have been fully satisfied." (Italics ours.)
Thus, unlike that in the Hibernia Bank, the present note executed for the purchase price expressly limited the vendor's lien to the amounts stated by the note, including interest and attorney's fees.
The vendor's lien so secured did not include securing any penalty for non-performance of agreements by the buyer furnished by him additional to the purchase price owed by him as part of the consideration for the sale. This re-enforces the interpretation previously reached above in this opinion, by which the penalty payments cannot be regarded under any proper interpretation of the contract as being part of the purchase price secured by the vendor's lien securing the sales price described in the instrument of sale.
Finding that the majority has incorrectly interpreted the clause in the light of its contractual intent, as well as has ignored the principles that liens are strictly construed, I must respectfully dissent.

Appendix A
The contract provides:
"This sale is made and accepted for the following considerations: * * *
"(B) Performance by Buyer of the following acts at no cost to Seller:
(1) Erect five (5) foot high chain link fence around oxidation pond and water wells.
(2) When first ten (10) houses in subdivision are complete, Buyer shall drill water supply well of sufficient capability to furnish water needs for 200 single family residences. Buyer to supply all equipment and needs for water distribution to all lots conveyed herein, including, but not limited to, pump, reservoir, and water distribution lines. All of these facilities are to meet the approval of state and parish health department authorities. Upon installation of all these water supply and distribution facilities, title shall, ipso facto, and without further acts or documents, vest in Lessard Acres, Water and Sewer Works, Inc.
(3) Blacktopping of any new subdivision streets to meet Ascension Parish Poiice Jury requirements.
(4) Furnish all utilities to each lot in the subdivision, including, but not limited to sewerage collection lines, electricity, natural gas (if needed), electricity, water.
(5) Any additional improvements to the subdivision undertaken by Buyer shall be at its expenses.
(6) All of the water distribution and supply system, and sewerage collection and disposal system, shall be owned and maintained by Lessard Acres Water & Sewer Works, Inc., which is owned by Seller.
(7) Buyer agrees to erect houses upon all subdivision lots as soon as sound business judgment dictates. As each house and lot is sold, $500.00 of the proceeds shall be paid to the Bank of Gonzales for the reduction of the principal balance due upon the two mortgages assumed by Buyer hereinabove. These $500.00 payments are to be in addition to the regular monthly installments due and payable on the two mortgages and are to be made to secure a release from the Bank of Gonzales mortgage and the second mortgage retained by Seller herein. Seller agrees to sign a release on each lot sold, upon payment by Buyer of the $500.00 to the Bank of Gonzales. No payment to Seller shall be due on the second mortgage retained herein until the entire balance due on the two mortgages assumed hereinabove has been paid and cancelled.
*300 Seller agrees that by signing a release on each lot sold hereafter that he does additionally release said lot from any and all the provisions of this agreement, including but not limited to any resolutory condition, vendor's lien, mortgage, etc.
(8) All sales of lots out of the subdivision shall be with reservation of ten (10) foot servitudes for public utility purposes, installation and maintenance of water and sewer lines by Seller's corporation, as shown on survey map. * * *"
NOTES
[1] The clause in full provides:

"At the end of five (5) years from this date, if all one hundred (100) lots described on page one hereof are not sold, and all the mortgages mentioned herein on the property herein conveyed are not paid in full, then all lots remaining unsold by Buyer herein will revert in full ownership to Seller, ipso facto, and without any further act or action on the part of Seller or Buyer herein, and without cost to Seller herein. If for any reason this reverter paragraph is held null and void and unenforceable, the Buyer herein agrees to pay to Seller herein the sum of $500.00 per lot remaining unsold."