179 So.2d 528 (1965)
Emma Nujber KERSHAW et al., Plaintiff and Appellee,
v.
Roy DESHOTEL et al., Defendant and Appellant.
No. 1522.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1965.
Rehearing Denied November 17, 1965.
*529 Cavanaugh, Brame, Holt & Woodley, by Donald E. Walter and Meredith T. Holt, Lake Charles, Knight & Knight, by Herschel N. Knight, Jennings, for defendantsappellants.
C. C. Jaubert, Lake Charles, for plaintiffappellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This case and Suire et al. v. Travelers Indemnity Company et al. La.App., 179 So.2d 532, are consolidated damage suits arising out of a collision between a Ford stationwagon, driven by Ambrose G. Suire, and a 1956 Oldsmobile, driven by Roy Deshotel. Plaintiffs are occupants, or heirs of deceased occupants, of the Suire vehicle. Defendants are Deshotel and his alleged insurer, Travelers Indemnity Company. From an adverse judgment on the merits the defendant insurer alone appeals. Plaintiffs answered the appeals, seeking increases in their respective awards.
The principal issues are insurance coverage and the quantum of damages.
The general facts are that on the afternoon of Saturday, April 14, 1962, Mr. Roy Deshotel went to Oustalet Ford, Inc., to purchase a used car. Certain negotiations with their salesmen took place. One of the principal issues is whether these negotiations culminated that Saturday afternoon in the sale of the 1956 Oldsmobile for $545, or whether the completion of the sale was suspended by certain conditions until after the accident, which occurred at about 6:30 p. m. that night. The defendant, Travelers Indemnity Company, carried liability insurance for Oustalet Ford, Inc. Hence, the coverage issue depends on whether Oustalet sold the automobile to Deshotel before the accident. More detailed facts concerning the nature of the transaction will be discussed hereinafter.
At about 4:00 p. m. Deshotel drove the 1956 Oldsmobile out of Oustalet's place of business in Jennings. He picked up his then fiance, Verna Fontenot, and they later drove out on Highway 90. Deshotel contends he turned the wheel over to his fiance, but the evidence clearly supports the finding of the district judge that Deshotel was driving.
While going west on Highway 90, Deshotel drove into the wrong lane of traffic and there struck the Suire stationwagon, which was traveling east. Two occupants of the Suire vehicle received injuries from which they died, and others received lesser injuries.
The evidence shows clearly that the sole cause of the accident was the negligence of Deshotel in driving into the wrong lane of traffic.
We will first discuss the issue of insurance coverage. The pertinent facts are as follows: On arrival at Oustalet that Saturday afternoon, Deshotel told the salesman he was going to receive a considerable sum of money from a workmen's compensation settlement. He asked if Oustalet would sell him a car, with the understanding that payment would come later from the settlement funds. Deshotel then selected the 1956 Oldsmobile and they agreed on a price of $545. The salesman verified by a telephone call to Deshotel's attorney that the compensation settlement was forthcoming and Deshotel executed an assignment, authorizing the attorney to withhold for Oustalet the sum of $545 from Deshotel's share of the settlement.
*530 Deshotel then signed a form, prepared by Oustalet, designated at the top of the page as a "Buyer's Order". This document stated that Deshotel bound himself to purchase the automobile for $545. It also contained the following provisions:
"The above comprises the entire agreement to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized.
"This order is not valid unless signed and accepted by Dealer and approved by a responsible Finance Company as to any deferred balance."
Also, there is printed in large black capital letters at the bottom of the "Buyer's Order" the following language: "THIS IS NOT AN ORDER UNTIL ACCEPTED BY AN OFFICIAL OF THE COMPANY".
The Buyer's Order form was signed only by Deshotel. It was not signed by any person on behalf of Oustalet Ford, Inc.
The salesman for Oustalet testified he intended and understood the sale to Deshotel was complete on that Saturday afternoon. He said no official of the company was present, so he followed the previously approved procedure of having another salesman orally approve the deal. He testified the "Buyer's Order" was signed by Deshotel purely for bookkeeping purposes. Oustalet's general manager, Mr. Amar Benoit, testified that although he did not see the "Buyer's Order" until the following Monday morning, the company would stand by a deal made by their salesmen, under the company approved procedure of having two salesmen approve it, as they did in this case. Deshotel also testified that he understood the sale was complete on Saturday afternoon.
As regards payment for the car, the evidence shows that on the following Friday, April 19, 1962, the workmen's compensation settlement was approved by the court and Oustalet received the $545 in payment of the automobile.
Nevertheless, Mr. Benoit, Oustalet's general manager, testified in a pretrial deposition that he considered the "Buyer's Order" comprised the entire agreement, as stated on its face. He said the purpose of requiring the purchaser to sign the order was to "keep a salesman from making a verbal agreement, you might say, other than the document, that the document states." The manager also testified in this deposition that he did not consider the order as binding on Oustalet unless it was signed by an official of the company and approved by the finance company as to any deferred balance.
The trial judge noted particularly that the only written evidence of this transaction is the Buyer's Order. Oustalet prepared this form and required Deshotel to sign it. The provisions thereof are clear and free of ambiguity. It is binding on Deshotel to purchase the automobile, but it is not binding on Oustalet until it is approved and signed by an official of the company and by a finance company as to any deferred balance. Despite the testimony at the trial, the deposition of the manager taken before the trial shows clearly that this was the purpose, intention and understanding of Oustalet as to the effect of the Buyer's Order.
The true purpose and legal effect of this Buyer's Order is demonstrated by considering several things which could possibly have occurred: (1) Deshotel might have refused the workmen's compensation settlement or the district judge might have refused to approve it. (2) Deshotel might have reneged on the assignment of a portion of his settlement funds, since such an assignment is unlawful under the express provisions of our workmen's compensation act. (3) The officials of Oustalet Ford, Inc. might have refused to approve the transaction. We think the trial judge correctly concluded, after listing some of these possibilities, that "under these circumstances would not Oustalet Ford, Inc. have *531 seen fit to exercise its rights, which it clearly had under the Buyer's Order form, to state that no sale had taken place and refused to issue title papers?"
The applicable law is clear. LSA-C.C. Article 2471 provides: "A sale, made with a suspensive condition, does not transfer the property to the buyer, until the fulfillment of the condition. * * *" The case of Jackson Motors, Inc. v. Calvert Fire Insurance Co., 239 La. 921, 120 So.2d 478 (1960) holds that the sale of an automobile, conditioned on the approval of the purchaser's credit by a finance company, is a sale contracted on a suspensive condition. Thus, the sale of the automobile in the present case was contracted on the suspensive condition that the Buyer's Order be approved by an official of the company and by a finance company as to any deferred balance. Ownership of the vehicle was not transferred until the fulfillment of these conditions. Hence, at the time of the accident, the automobile was still owned by Oustalet Ford, Inc. and insured by the defendant, Travelers Indemnity Company.
The remaining issues relate to the quantum of damages. Our jurisprudence is now established that appellate review of the amounts of awards is limited to a determination of whether there has been an abuse of the "much discretion" vested in the trial judge or jury. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964).
Brent Suire, infant child of Henry Ford Suire, was awarded $500 for pain and suffering. He had a mild fracture of his left arm which was casted for five weeks and recovered without residual. Medical expense was $85. We find no abuse of discretion as to this award.
Mr. Henry Ford Suire testified he received "some broken ribs", but x-rays and medical testimony showed no ribs were broken. The district judge awarded Mr. Suire $200 for pain and suffering in connection with bruises to his chest. This award was sufficient.
In addition, Mr. Henry Ford Suire sued for certain damages as head and master of the community. He was awarded $951.15 for medical expenses of his wife. This item is correct. (She filed a separate suit in Federal Court for her damages for personal injuries and this claim is not before us.) Suire was also awarded $1,000 for loss of earnings of his wife, Mrs. Laura Suire. She had worked for about 2 years as a nurses' aid, but had stopped work 4 months before her child was born. Following the accident she had a long and complicated recovery, spending several months in hospitals. She has some permanent disability to her arm. She contends she is disabled from doing the nursing work she did before the accident, and that in addition she had planned to take training to become a licensed practical nurse, and now she will be unable to do so. The medical testimony was in conflict as to whether Mrs. Suire could return to nursing work after the accident. Under all of these circumstances the district judge felt that it was very speculative as to whether Mrs. Suire would ever have returned to work or taken practical nurses training, but that she was actually disabled from any work for a period of at least a year. She earned $50 a month plus room and board as a nurse's aid and would have earned $150 a month as a practical nurse. The trial judge awarded $1,000 for loss of Mrs. Suire's earnings. We find no abuse of discretion in this regard.
Staff Sgt. Ambrose Suire, driver of the Suire vehicle, received chest injuries, including fractured ribs, a ruptured spleen and a partial rupture of the liver. However, he recovered quickly and returned to full duty in about 2 months after the accident. The district judge noted that Sgt. Suire did not appear at the trial and didn't seek to introduce any medical testimony other than that of the initial treating physician. We find no abuse of the lower *532 court's discretion in its award of $2,500 to Sgt. Suire for pain and suffering.
One of the persons who died as a result of the accident was Mr. Albert Nujbar. He left no ascendants or descendants. The evidence showed he never regained consciousness after the accident and was about 51 years of age when he died. The trial judge awarded a total of $1,000, i. e., $250 each, to his 4 surviving brothers and sisters. In the absence of any evidence to show any substantial loss of companionship, love or affection, we find no abuse of discretion as to this award.
The other person who died as a result of the accident was Mrs. Josephine Suire Nujbar. She lived for about 10 days following the accident and suffered considerable pain. She was 56 years of age at the time of her death. The trial judge awarded a total of $10,000, i. e., $2,500 each, to 4 adult children. Counsel for these heirs has pointed out that through inadvertence the trial court omitted to name the fifth child, Joseph Boudoin Suire. Even $2,500 to each of the five children is low, but again the evidence does not show any substantial loss of companionship, love or affection suffered by these 5 adult children. However, each of the five children should receive $2,500 for this item of damage. The trial court did not discuss the matter in detail, but we think an award to these heirs for pain and suffering of their mother before her death should also be made and that the sum of $5,000 is appropriate under the circumstances. Accordingly, we think the judgment of the trial court should be amended so as to award a total of $17,500 to the 5 adult children of Mrs. Josephine Suire Nujbar.
For the reasons assigned, the judgment appealed is amended by adding the name of Joseph Boudoin Suire to the 4 listed children of Mrs. Josephine St. Amant Suire Nujbar and by increasing the award to these 5 children from $10,000 to $17,500. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.