413 So.2d 644 (1982)
Doris SHERMAN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
Raymond B. SHERMAN, Sr.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
Nos. 14705, 14706.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Writ Denied May 17, 1982.
*645 Hobart O. Pardue, Jr., Springfield, for plaintiff, Doris Sherman.
Larry Book, Baton Rouge, for plaintiff, Raymond Sherman.
Horace Lane, Baton Rouge, for defendant, State Farm Mutual Auto Ins. and Sugarland.
James H. Morgan, III, Baton Rouge, for defendant, Prudential Property and Cas. Ins. Co.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is an appeal by defendant, State Farm Mutual Automobile Insurance Company, from the judgments in the two consolidated suits, in the first of which judgment was rendered in favor of Doris Sherman, plaintiff, in the sum of $53,750.00; and in the second of which judgment was rendered in favor of Raymond B. Sherman, Sr., plaintiff, in the sum of $38,750.00.[1]
This appeal involves only an insurance coverage question. The trial court found that Brenda K. Eason, the driver of the Chevrolet pickup truck which crashed head-on into the Sherman vehicle in the Sherman vehicle's lane of traffic, killing *646 Raymond B. Sherman, Jr., was "negligent and her negligence was the sole and proximate cause of the accident;" and that Raymond B. Sherman, Jr., the driver of the Sherman automobile, "was not contributorily negligent." The record establishes fault and proximate cause of the accident, and those issues in the trial court are no longer issues on appeal. Quantum is also not an issue.[2]
To decide the insurance coverage question, the Court must decide who was the owner of the pickup truck involved in the accident, on the day of the accident, October 20, 1979. As expressed by the trial judge: "The real question in this suit is the ownership of the pick-up truck."
State Farm denied coverage to Brenda K. Eason on the ground that its policy did not insure the Chevrolet pickup truck she was driving at the time of the accident. The basis for its position is that the truck was sold to Calvin Eason, the father of Brenda Eason, in July of 1979 by Sugarland Homes, Inc., so that on the day of the accident, October 20, 1979, the owner of the truck was Calvin Eason, and not Sugarland Homes, Inc. The insurer contends that under the terms of State Farm's policy issued to Sugarland Homes, Inc., on the Chevrolet pickup truck, the coverage lapsed when the ownership of the truck was transferred to Eason.
The facts on the issue of whether the truck was sold to, and thus, was owned by Eason in July (and at the time of the accident) come from the testimony (in court and by deposition) of Calvin Eason. The trial court stated:
"... The Court is of the opinion that no sale actually took place. The testimony of Mr. Eason was to the effect that he would have completed the sale if the balance at the bank was as stated. His intention seemed to have been to collect the money that Sugarland owed him. It appears that if Sugarland would have paid him in full and requested a return of the truck, he would have complied with their request. He was very definite about keeping the truck until his $3,000 was paid." (Emphasis by the trial court.)
Thus, the trial court ruled that Brenda Eason was an omnibus insured under the State Farm policy, said policy not having lapsed. We agree.
The law is clear that the sale of a motor vehicle is governed by the Civil Code Articles relating to the sale of movables, and is not affected by non-compliance with the requirements of the Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq. See Scott v. Continental Insurance Company, 259 So.2d 391 (La.App. 2 Cir. 1972).
The three essential elements of a sale are the thing, the price and the consent. LSA-C.C. art. 2439. There must be a meeting of the minds of the parties as to the object to be sold and the price. The price must be certain and should be fixed and determined between the parties. LSA-C.C. art. 2464.
The record in the instant case reflects that Sugarland and Eason did not have a meeting of the minds as to price. Without a certain price there can be no sale. Both parties must agree on the thing and the price for a valid sale to be complete under LSA-C.C. art. 2456.
Whether or not a sale between Sugarland and Mr. Eason actually took place rests entirely on the testimony of Mr. Eason, as stated above, and the applicable law. Mark Falgoust, the president of Sugarland, did not testify, and all parties stipulated that if Mr. Falgoust had been called to testify on the facts and circumstances of the alleged sale of the pickup truck by Sugarland to Calvin Eason, his testimony would have been substantially the same as testified to by Mr. Calvin Eason in the latter's deposition dated February 22, 1980, and by his testimony in court at the trial.
There is no documentation to support State Farm's contention that a sale did take place.
*647 Our examination of the record shows that Mr. Eason testified that his use of the truck was part of his employment agreement with Sugarland.
"Q. And during the period of time that you worked for them, did they furnish you anything for transportation?
A. Yes, they did.
Q. And what was that?
A. A '78 model Chevrolet truck.
Q. And during the time that you used the truck did members of your family also use it?
A. Yes, they did.
Q. Were you ever prohibited from allowing members of your family to use the truck by Sugarland?
A. None whatsoever."
The furnishing of the truck by Sugarland to Mr. Eason continued after he had quit working for them as an employee, and was working as a subcontractor:
"A. They gave me ayou see, at that time I had quit running work for them and I was doing subcontract work, dry wall work, and they owed me for doing dry wall.
Q. Did they still furnish you this truck?
A. They still furnished me the truck. That's when the agreement came up that I would buy the truck." (Emphasis added.)
In his testimony, Mr. Eason indicated that he was only keeping the truck because Sugarland owed him money, i.e., the truck was being held as security. In response to the question of whether or not he considered the truck to be his, Mr. Eason stated that if a man owed him $3,000.00 and he had his truck he was not going to return the truck until he was paid. Mr. Eason's testimony on this point is as follows:
"Q. But after you ceased working for them you still considered it your truck, I assume.
A. Well, sure. Like I say, at the end of that time even when I quit working for them they still owed me this money and I'm not going to turn no truck back over to them. And they could have come paid me and said, `Well, I want my truck', they could have got it if they hadn't wanted me to have it. If they didn't want to go to the bank and sign to let me have it that would have been fine." (Emphasis added.)
Mr. Eason, in his testimony, indicated that while he and Sugarland had talked about purchasing the truck, no definite agreement had been reached. Mr. Eason testified that after the purported agreement in July, 1979, things went on for three or four weeks and no one knew what to do with the truck.
Mr. Eason also indicated that he was to buy the truck from Sugarland and assume the outstanding mortgage.
"Q. All right. And what was the agreement about the purchase of the truck?
A. Well, when we came to an agreement about buying the truck there was four of us, I believe, that knew about the truck agreement and that I was going to assume the notes on the truck....

Q. But if you would have bought the truck you were going to be credited some $3,000.00; is that correct?
A. Well, I would have been credited or we would have got everything straight and I would have assumed the balance of the truck, whatever the difference would have been." (Emphasis added.)
The above testimony shows that no sale had taken place.
At the trial, Mr. Eason reiterated much of his prior testimony given by deposition, and left the impression that he was to buy the truck from Sugarland when he assumed the outstanding mortgage on it. Mr. Eason's trial testimony also indicated that there was never an exact amount agreed upon and that neither he nor Sugarland knew the amount owed. Mr. Eason knew the amount of the old monthly payments, but did not know the name of the bank *648 holding the mortgage. He also did not know the assumption figure; or, whether assumption would be allowed by the mortgage holder. The balance, or number of payments left, was indefinite.
From the testimony of Mr. Eason, we conclude, as did the trial court, that the parties had not entered into a contract of sale at the time of the accident. We reach this conclusion because of the uncertainty of a price, and the absence of consent or a meeting of the minds between Sugarland and Eason. We particularly find that the price was not capable of being ascertained by computation of definite facts; it can not be deemed certain in the present case.
Moreover, we find that certain suspensive conditions were not fulfilled, so that ownership was never transferred to the prospective buyer. LSA-C.C. art. 2471; Kershaw v. Deshotel, 179 So.2d 528 (La.App. 3 Cir. 1965).
The sale from Sugarland to Eason was not to take place until the bank allowed Eason to assume the mortgage or Sugarland co-signed a note for Eason. Thus, the sale was suspended either until the bank allowed Eason to assume the note or until Eason secured new financing with Sugarland being the co-maker on a new note. At no point during Mr. Eason's testimony does he indicate that this was to be a cash transaction, nor does he state that the money owed to him by Sugarland was sufficient to pay off the outstanding mortgage.
In Kershaw v. Deshotel, supra, the Court recognized that pursuant to LSA-C.C. art. 2471, the sale of an automobile did not take place, because the sale was suspended until the purchaser's credit was approved.
In Jackson Motors, Inc. v. Calvert Fire Insurance Company, 239 La. 921, 120 So.2d 478 (La.1960), the Louisiana Supreme Court found that a sale of an automobile did not take place even though the purchaser had signed a promissory note, an act of sale and chattel mortgage, and an application for title and license (VEH-1 form). The Court found that no sale had taken place because a suspensive condition, i.e., approval of financing, existed which was not fulfilled at the time in question.
The conclusion that the sale from Sugarland to Eason did not take place fits the facts in the cited cases, as outlined above. There is no dispute that Eason secured delivery of the truck from the moment of his employment with Sugarland, and not from the moment of the alleged sale in July. It is clear from the testimony that Mr. Eason treated the truck no differently after July than he did before July. It is also clear that Mr. Eason made no payments on the truck, thus indicating he did not assume the outstanding mortgage. As far as Mr. Eason knew, the secretary at Sugarland continued to make the note payments. There was no testimony offered or evidence introduced to show that monthly payments were not still being made by Sugarland on the chattel mortgage on the truck or that Sugarland was in default on said payments. Sugarland did not notify State Farm that the truck was sold, or to cancel coverage on that truck. Sugarland provided Eason with the truck while he was employed at Sugarland, and while he was a subcontractor for Sugarland. The record does not reflect that there was any change in the relationships between the truck, Mr. Eason, Sugarland or State Farm after July, 1979, as appellant would have this Court believe.
Counsel for State Farm argues that General Finance Corporation of New Orleans v. Harrell, 188 So.2d 211 (La.App. 1 Cir. 1966), is indistinguishable from the present case and, hence, controlling. We find that General Finance can be distinguished on at least two major points and is not controlling in the instant case:
(1) The Court in General Finance found that a sale took place, because of delivery of the automobile to the corporation and payment by the corporation of the notes due on the automobile after delivery. In the instant case, Eason had had possession of the car long before the purported sale in July, 1979, and he never made a payment (which Sugarland presumably continued to make).

*649 (2) In General Finance there was evidence introduced from which a price could be computed or ascertained. In the instant case, the only testimony presented was that of Mr. Eason to the effect that he did not know the name of the bank holding the chattel mortgage, did not know the amount owed, did not know the number of payments which had been made and did not know the length of the term of financing. Without that information, the price can not be ascertained, as was done in General Finance. The ascertainment of price "by computation of definite facts" cannot be done in the instant case.
For similar reasons, Lessard v. Lessard Acres, Inc., 349 So.2d 293 (La.1977), and Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171 (La.1980) are distinguishable, and not controlling in the instant case.
Accordingly, we hold that State Farm has not carried its burden of proving that a sale took place, and has not shown that the trial court committed manifest error in finding coverage under its policy.
For the reasons assigned, we affirm the judgment of the trial court at appellant's costs.
AFFIRMED.
NOTES
[1] The plaintiffs' suits against Sugarland Homes, Inc. were dismissed, because there was no evidence that Brenda Eason was either an employee or agent of Sugarland Homes, Inc. at the time of the accident. The suits against Brenda Eason's uninsured motorist carrier, Prudential Property and Casualty Insurance Company, were dismissed because the awards to plaintiffs were within State Farm's liability limits.
[2] In his brief, counsel for decedent's father argues that the award to him should be increased to $50,000.00. However, he neither appealed nor answered the appeal to request such modification. Therefore, we cannot consider that item. LSA-C.C.P. art. 2133.