583 So.2d 12 (1991)
Ann M. MALONEY
v.
STATE FARM INSURANCE COMPANY, et al.
Consolidated With John C. DODT
v.
Dolores MATHIEU, et al.
Consolidated With Ann M. MALONEY
v.
Dolores MATHIEU, et al.
Consolidated With Ruth WRIGHT
v.
Herbert BANKSTON, et al.
Nos. 90-CA-1140, 90-CA-1956 to 90-CA-1958.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Rehearing Denied August 27, 1991.
Writ Denied October 4, 1991.
*13 Owen A. Neff and John W. Hite, III, Sessions & Fishman, New Orleans, for State Farm Auto. Ins. Co.
Terrence J. Hand and Ronald E. Lampard, Hand & Lampard, Metairie, for Ann Maloney.
Lyman L. Jones, Jr., New Orleans, for John C. Dodt.
Before KLEES, LOBRANO and WARD, JJ.
WARD, Judge.
In consolidated appeals, State Farm Mutual Automobile Insurance Company, as an uninsured/underinsured motorist carrier, seeks reversal of two adverse jury awards, contesting policy coverage in one instance and causation in the other.
In August 1985 John C. Dodt and his passenger, Ann M. Maloney, suffered serious injuries when their vehicle was rearended at a stop light by a vehicle owned by Dolores Mathieu and driven by Herbert Bankston.
Dodt and Maloney sued State Farm as the liability insurer on the Bankston vehicle. However, because the State Farm liability policy covering the tortfeasor's[1] vehicle provided only $50,000.00 aggregate coverage, Dodt and Maloney both sued State Farm as the underinsured motorist carrier on various other policies. Dodt made claims against the State Farm policy on the vehicle he was driving at the time of the accident and against another State Farm policy naming him as an insured and *14 covering a vehicle owned by his mother. Ms. Maloney claimed under a policy issued to her parents.
At this point, divergence of issues on appeal requires that the Dodt and Maloney cases be addressed separately. We address the Dodt appeal first.
On the morning of the accident, Dodt was driving a 1971 Dodge Charger automobile, registered in the name of his sister and brother-in-law. State Farm provided $25,000.00 uninsured motorist coverage on that vehicle. Dodt was also a named insured on a State Farm policy which covered a 1971 Plymouth owned by his mother and which provided uninsured motorist coverage in the amount of $100,000.00. This second policy, which covered a vehicle that was not involved in the accident, provided that the uninsured motorist coverage did not apply if at the time of the accident Dodt was occupying a vehicle owned by him.
LSA-R.S. 22:1406 D(1):
(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle owned is not described in the policy under which a claim is made ... Id. (emphasis added)
State Farm tendered the $25,000 coverage afforded by the policy covering the Dodge Charger but denied liability for any amount of damages in excess of this $25,000 coverage, claiming applicability of the ownership exclusion under the $100,000 policy.
The Court determined the issue of policy coverage and the jury decided the issue of quantum. The Trial Judge ruled that the $25,000 insurance policy on the Dodge Charger applied and also the $100,000 insurance policy on the car owned by Dodt's mother based upon his finding that since Dodt was not the owner of the Dodge Charger, the exclusion under the $100,000 policy was inapplicable.
The jury returned a verdict awarding Dodt $100,000 for general pain and suffering, lost wages and medical expenses. Thereafter, certain sums paid by State Farm prior to trial were credited against the award, leaving a net judgment of $80,000.
On appeal, State Farm does not dispute it owed $25,000 of the net judgment under the uninsured provisions of the policy covering the 1971 Dodge Charger driven by Dodt at the time of the accident, but strenuously denies liability for the remaining $55,000 of the judgment, arguing as error the Trial Judge's findings that Dodt was not the owner of that vehicle, and as a consequence of that finding, the Trial Judge's other ruling that coverage was provided by the State Farm policy on the Plymouth. Hence, the only question for determination in the appeal of John C. Dodt is the ownership of the Dodge Charger.
Dodt testified he had an informal agreement to purchase the vehicle from his sister, Mrs. Gauthier, and his brother-in-law. This agreement called for him to pay a price of $1,000 at the rate of $100 per month. Dodt and his sister readily admit full payment was made prior to the accident, and the final payment was made three months before the accident. Registration of the vehicle had not been transferred prior to the accident, and a bill of sale was never executed. Additionally, both Dodt and Mrs. Gauthier testified that Dodt did not have unrestricted use of the vehicle because Mrs. Gauthier and her husband continued to use the car. However, Mr. and Mrs. Gauthier resided in Shreveport and were in Shreveport at the time of the accident; while Dodt resided in New Orleans and the car was in his possession in New Orleans at the time of the accident. Mr. and Mrs. Gauthier maintained insurance on the vehicle in their names and permitted Dodt to use the car.
Notwithstanding Dodt's denial of ownership, and the Trial Judge's ruling that because the Certificate of Registration and Certificate of Title were never changed the vehicle did not belong to Dodt, State Farm argues that the Civil Code Articles on sales are controlling in this dispute. State Farm is correct.
*15 The sales of motor vehicles are governed by the Civil Code articles relating to sales, and are not affected by non compliance with the requirements of the Vehicle Certificate of Title Law. La.C.C. arts. 2439, 2456. Talley v. Hughes, 481 So.2d 172 (La.App. 4 Cir.1985) citing Sherman v. State Farm Mutual Automobile Insurance Co., 413 So.2d 644 (La.App. 1 Cir. 1982) cert. denied 414 So.2d 776 (La.1982).
La.C.C. Art. 2456. Completion of Contract by Agreement as to Object and Price.
The sale is considered to be perfected between the parties, and the property is of right acquired by the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.
Thus, LSA-R.S. 22:1406 D(1)(d) supra, is applicable in the instant case. The uninsured motorist coverage of State Farm applicable to the 1971 Plymouth is not available as coverage and that part of the Trial Judges decision is reversed, with judgment rendered in favor of State Farm.
Turning now to the appeal urged by Ann M. Maloney, Ms. Maloney sued State Farm as her underinsured motorist carrier for injuries to her neck, back, spine and temporomandibular joint (TMJ) sustained while a passenger in the vehicle driven by John C. Dodt.
Prior to trial State Farm tendered $25,883.62 in general damages and medical expenses for her neck, back and spine injuries. Trial proceeded with Ms. Maloney seeking an increase in the amounts tendered prior to trial plus recovery for her TMJ injury.
The jury returned a verdict of $2,000 for past lost wages, $25.00 in medicals and $5,000 for past and future mental pain and suffering in connection with her neck, back and spine injuries. The jury made no award for her claim of TMJ damages. Thereafter, she timely filed a Motion for Additur and in the alternative for a new trial on the issue of TMJ injuries. The Trial Court granted the Motion for Additur increasing the award for past and future pain and suffering to $30,000, awarding $495.00 for past medicals, and in the alternative, granted a new trial if State Farm rejected the additur, which it did. State Farm then sought supervisory review of the Trial Court's order granting a new trial on the issue of TMJ injuries. This Court converted State Farm's application for supervisory writs to an appeal (90-C-0245; May 17, 1990) declaring that the Trial Court's order granting a new trial was actually a judgment notwithstanding the verdict on the issue of State Farm's liability for the TMJ injury.
In its only assignment of error, State Farm argues the Trial Court improperly granted a judgment notwithstanding the verdict on the issue of TMJ injuries after the jury returned a verdict denying Ms. Maloney's claim because the injuries were not causally related to the accident. State Farm contends the evidence does not support the imposition of liability for the TMJ injuries. We do not agree.
At trial Ms. Maloney called Dr. Charles Taggart, an expert in the field of general dentistry, who advised the Court he first examined the plaintiff for a TMJ complaint on February 8, 1988. At that time her chief complaints were frequent headaches, back and neck pain, excessive fatigue and "clicking" sounds and soreness in her jaw. Dr. Taggart noted that Ms. Maloney told him she experienced these discomforts since the time of the accident. Dr. Taggart told the Court that he fitted the plaintiff with an orthopaedic appliance on the lower teeth to bring her jaw bone back into a position to heal. He explained to the jury that patients who experience neck injuries in an accident, as the plaintiff did, can damage the disc between the lower and upper jaw. Once damaged, the disc is never regenerated. He told the Court that in Ms. Maloney's case she may have to wear the appliance a minimum of six months or as long as the rest of her life. Additionally, he said that if the orthopaedic appliance is ineffective, Ms. Maloney could face major surgery to replace the disc with a plastic one. In any event, the doctor testified *16 Ms. Maloney's jaw would never heal to its condition prior to the accident. Dr. Taggart unequivocally testified plaintiff's injury occurred as a result of the accident.
On cross-examination, State Farm attempted to discredit Dr. Taggart's testimony by showing his examination of Ms. Maloney occurred more than two years after the accident. Moreover, State Farm attempted to show that Ms. Maloney never voiced a complaint of jaw injury at the time of her deposition but only shortly before the trial.
Dr. Taggart conceded he began treating Ms. Maloney two and one-half years after the accident but nonetheless explained it is not uncommon for an accident victim and their treating physician not to immediately recognize injury to the temporomandibular joint, because symptoms of a neck injury overlap with those of TMJ injuries. Complaints are noted, as in plaintiff's case, by a treating physical therapist. He continued by noting that headaches are a major complaint of both neck and jaw injury and that in fact Ms. Maloney's major complaint were headaches. He noted that she and her treating orthopaedist in all probability attributed the headaches solely to her neck injury when in fact they were in part masking the damage to her jaw.
Dr. Chisesi described his treatment of plaintiff which began five weeks after the accident. In addition to back and neck pain she complained of actual cracking in her jaw on October 1, 1986. Dr. Chisesi candidly admitted he did not interpret or relate the "cracking" complaint to her jaw because he had no expertise in temporomandibular joint abnormalities.
Ms. Maloney testified that prior to the accident she did not experience any of the difficulties for which she consulted Drs. Taggart and Chisesi. She explained her failure to mention her jaw problem during her deposition by stating she did not know whether it was connected to the pain in her neck, or that they were related. She informed the Court she noticed the cracking shortly after the accident and that the noise was so loud that when she ate, friends commented on the sound.
State Farm offered the testimony of Dr. Russell Grunsten, an expert in the field of orthopaedic surgery. Dr. Grunsten strenuously disagreed with Dr. Taggart's opinion. The Court allowed Dr. Grunsten to explain that in his lengthy experience in testing of the effects of impact induced trauma to the human body, it had never been proven that a TMJ injury occurred in the absence of impact to the head or face. Dr. Grunsten concluded that because Ms. Maloney did not strike her head or face during the accident, the jaw injury could not have resulted from the accident.
Although Dr. Grunsten is a recognized expert in orthopaedics, the Court refused to accept his testimony as an expert in the area of TMJ injuries because he lacked medical expertise in the field. This was not error. La. C.E. 702, comments c and d.
The standard for granting JNOV is the same used to determine whether a directed verdict should be granted. When the Trial Judge considers whether to render JNOV, the Trial Judge must consider all the evidence in a light most favorable to the party opposing the motion, and then if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict, the motion should be granted. Acosta v. Pendleton Memorial Methodist Hospital, 545 So.2d 1053 (La.App. 4 Cir.1989).
Where the Trial Court is convinced that reasonable minds could not differ as to the amount of damages in light of evidence, the Court should have authority to grant an appropriate judgment notwithstanding the verdict. C.C.P. art. 1811, subd. F, Roger v. Cancienne, 538 So.2d 670 (La.App. 4 Cir.1989), writ denied 542 So.2d 1382.
In his reasons for JNOV, the Trial Judge concluded "[that] $30,000 was the lowest reasonable amount the jury could have awarded plaintiff for her pain and suffering in connection with the injuries to her TMJ and the disc in her jaw." The Judge cited West v. Melancon, 507 So.2d 1250 (La.App. 4 Cir.1987) in support of his "lowest *17 reasonable amount" award and based the quantum on the testimony of Dr. Taggart that the jaw injury was caused by the accident. The Court further noted the findings of the permanency of the TMJ problems, Ms. Maloney's young age and her prior excellent health as justifications for the award.
Our review of the evidence and the Trial Judge's reasons for judgment lead us to conclude that the JNOV was not manifestly erroneous or an abuse of discretion. We affirm the lower court's ruling in this regard.
REVERSED AND RENDERED; AFFIRMED.
LOBRANO, J., concurs with reasons.
LOBRANO, Judge, concurring for additional reasons.
The record is clear that Dodt and his sister agreed to the sale of the Dodge Charger. There was mutual consent as to price and object. La.C.C. Art. 2456. The price was paid in full three months prior to the accident. Dodt argues, however, that the sale was subject to a suspensive condition of "transfer" citing Article 2471. He urges that since there was no transfer to him, there was no completed sale. I disagree for the following additional reasons.
Delivery is not an essential element to complete a contract sale. Article 2456. Article 2471 relied on by Dodt, appears in Chapter 5 of Title VII entitled "At Whose Risk the Thing is After the Sale is Completed." The entirety of Chapter 5 deals with the risk of loss after a sale is completed. Indeed, the very first article of Chapter 5 states:
"As soon as the contract of sale is completed, the thing sold is at the risk of the buyer, but with the following modifications." Article 2467.

The next six articles of Chapter 5 set forth the various exceptions to the general rule of Article 2467. They do not refer to or alter the requirements for a completed sale set forth in Chapter 4. Although Article 2457 provides that a completed sale may be subject to a suspensive condition, in the instant case delivery does not complete the sale. The sale was completed and ownership transferred when price and object were agreed upon. The risk of loss prior to actual delivery is governed by Chapter 5 of Title VII. Delivery and transfer of ownership, however, are entirely different.
Dodt places much emphasis on the comment "An Examination of the Role of Delivery in the Transfer of Ownership and Risk in Sale Under Louisiana Law," 60 Tul.L.R. 1034 (1986). I respectfully disagree with the underlying basis of that article. The author confuses the transfer of ownership with the transfer or delivery of the object of the sale. The confusion results from an attempt to equate possession of the object with ownership. Under the scheme of our Civil Code possession plays a functional role in determining who bears the risk of loss after a sale is complete, and the effect of the completed sale (of movables) on third persons. La.C.C. Art. 518.
NOTES
[1] State Farm stipulated to liability in these consolidated cases at trial, hence, liability is not an issue in these appeals.