669 So.2d 441 (1995)
Donald BIGGS and Diette Biggs
v.
John D. PREWITT, Jr., and Louisiana Indemnity Insurance Company.
ALLSTATE INSURANCE COMPANY
v.
John D. PREWITT and Louisiana Indemnity Insurance Company.
Nos. 95 CA 0315, 95 CA 0316.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Rehearing Denied March 29, 1996.
*442 Walter R. Krousel, III, Baton Rouge, for Plaintiffs-Appellees, Donald and Diette Biggs.
David Forrester, Baton Rouge, for Plaintiff-Appellee, Allstate Insurance Co.
William J. Cleveland, Slaughter, for Defendant-Appellant, Patterson Ins. d/b/a La.Indemnity.
Thomas D. Fazio, Baton Rouge, for Defendant-Appellee, John D. Prewitt, Jr.
Before SHORTESS, PARRO and KUHN, JJ.
SHORTESS, Judge.
This case arises out of an automobile accident. John D. Prewitt, Jr. (Prewitt), ran a red light and struck a vehicle driven by Diette Biggs. Biggs and her husband, Donald Biggs, sued Prewitt and his insurer, Louisiana Indemnity Company (Louisiana Indemnity).[1] In a separate suit, Allstate Insurance Company, the Biggs' insurer,[2] sued Prewitt and Louisiana Indemnity.[3] The cases were consolidated, and the issue of coverage was bifurcated. At trial, Louisiana Indemnity contended the policy purchased by Prewitt was a non-owner policy and Prewitt was the owner of the 1978 pickup truck which he was driving at the time of the accident; therefore, no coverage was afforded under the policy. The trial court held Prewitt was not the owner of the pickup truck, and coverage was intended and provided under the policy. The parties then stipulated to liability and quantum, reserving Louisiana Indemnity's right to appeal the coverage issue. Louisiana Indemnity then appealed.[4]

Who owned the truck?
In or about June 1992, Prewitt negotiated with Arthur Richard concerning the purchase of a 1978 pickup truck. Prewitt's deposition indicates Richard's asking price was $700.00 to $750.00. Prewitt's mother asked Paul Thornton, a family friend who occasionally employed Prewitt for odd jobs, if he would loan Prewitt the money to buy the truck. Thornton personally went to look at the truck and subsequently wrote a check to Prewitt for $700.00. No restrictions or conditions were placed on the loan.
Prewitt endorsed the check to Richard. Prewitt testified he and Richard executed a handwritten agreement for the purchase of the truck, but it was not notarized. This "bill of sale" was not offered into evidence at the trial, but nothing contradicted Prewitt's testimony. Prewitt then took the truck. Prewitt stated he also obtained the title and registration and hand-delivered this paper work to Thornton. Thornton was not present when the check was exchanged for the truck, was not a party to the "bill of sale," and was not involved in the transaction between Prewitt and Richard except for writing a check to Prewitt.
*443 A few months after Prewitt took the truck, the transmission failed, and Prewitt abandoned the truck on the side of the road. At this time, Thornton still had not been repaid any of the money he loaned Prewitt. Thornton retrieved the truck and spent an additional $300.00 repairing the transmission. Contrary to Prewitt's testimony, Thornton testified it was not until this point that he obtained the title and registration. Thornton testified that after retrieving the truck, he went to see Richard, and Richard gave him the title and registration. Thornton thereafter obtained title and registration in his own name. In September 1992, shortly after the truck was repaired, Prewitt returned to Thornton wanting the truck. He agreed to pay Thornton $100.00 immediately and $100.00 a month until the total of $1,000.00 (the loan amount and extra cost to repair the truck) was repaid. Thornton required Prewitt to get insurance before he would give Prewitt the truck. After Prewitt paid him the $100.00 deposit and showed him "proof of insurance where he had bought insurance," Thornton gave Prewitt the truck and the title and instructed him to transfer title to his own name. Thornton did not see Prewitt again prior to the accident and did not receive any further payments from him for the truck.
Seven months later, on April 9, 1993, Prewitt was traveling north on Florida Boulevard in Baton Rouge when he ran a red light and struck broadside the vehicle driven by Diette Biggs and occupied by her two children.
Louisiana Indemnity answered the suits filed against it by plaintiffs denying coverage because Prewitt had purchased a non-owner policy of insurance. This policy specifically excluded coverage for vehicles owned by the insured.
The jurisprudence of Louisiana is quite clear that the sale of a motor vehicle is governed by the articles in the Louisiana Civil Code relating to the sale of movables. Sherman v. State Farm Mut. Auto. Ins. Co., 413 So.2d 644, 646 (La.App. 1st Cir.), writ denied, 414 So.2d 776 (La.1982).
Civil Code article 2456, in effect at the time the transactions occurred, provided:
The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not been delivered, nor the price paid.[5]
The three essential elements of a sale are thing, price, and consent. There must be a meeting of the minds of the parties as to the object to be sold and the price. Sherman, 413 So.2d at 646. Depending on the circumstances of the case, consent of the parties to buy and sell a specific item at a reasonable price can be implied. Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171, 1173 (La.1980). The jurisprudence of this state does not require that the certificate of title to a vehicle be transferred in order for the sale to be a valid one. Wright v. Barnes, 541 So.2d 977 (La.App.2d Cir.1989); Shanks v. Callahan, 232 So.2d 306, 308 (La. App. 1st Cir.1969). Furthermore, sale of a vehicle is not affected by non-compliance with the Vehicle Certificate of Title Law, LSA-R.S. 32:701-738. Wright, 541 So.2d 977; Sherman, 413 So.2d at 646. Neither does the law require that an agreement to sell a motor vehicle be notarized or even reduced to writing. See Maloney v. State Farm Ins. Co., 583 So.2d 12 (La.App. 4th Cir.), writs denied, 586 So.2d 544, 589 So.2d 1058 (La.1991).
With these legal precepts in mind, we turn to the facts in the record before us and the findings of fact made by the trial court. A trial court's findings of fact are reviewed to determine if they are clearly wrong. Wright, 541 So.2d 977. In written reasons for judgment, the trial court concluded:
that no sale was intended or perfected such that John Prewitt would be the owner of the instant truck. The parties herein *444 contemplated and attempted a sale of the vehicle to Mr. Thornton who was to allow its use by the plaintiff, John Prewitt, if he provided insurance. Further, the court finds that it was the intent of the insured to obtain and the intent of the insurance agency to issue a policy of insurance which would provide liability coverage for Mr. Prewitt while he was driving the 1978 Ford Truck in question. Accordingly, coverage was intended and is provided by Louisiana Indemnity for John Prewitt's liability arising from the accident....
The trial court's findings of facts are clearly wrong. There can be no doubt that a sale was perfected when Richard agreed to sell Prewitt the truck for $700.00, and Prewitt consented and paid the money. Thornton only financed the sale. His testimony clearly indicated he never sought, nor wanted, ownership of the truck. In his deposition, he specifically stated that, without legal assistance, he "repossessed" the truck after Prewitt left it on the side of the road.[6]
Self-help in repossessing movables is not legally recognized in Louisiana. A person must go through legal means in order to repossess security for a loan, or to collect on an unpaid loan. Prewitt did not object when Thornton retrieved the truck or when Thornton refused to give the truck to him until he agreed to a payment schedule, gave a $100.00 deposit, and provided proof of insurance. Prewitt's deposition clearly shows that he did not know that owing money to Thornton for the truck did not legally confer ownership upon Thornton. He complied with Thornton's demands because he knew he owed Thornton the money for the truck. Finally, after Prewitt showed Thornton proof of insurance and gave him the deposit, Thornton gave Prewitt the title and instructed him to transfer it into Prewitt's name. In his deposition, Thornton specifically stated, "I told him ... that I did not want the truck, but I wanted the money I had invested in it."
The transfer of the vehicle between Thornton and Prewitt was not a sale because Prewitt already was the legal owner of the vehicle. Thornton never had ownership, he simply had possession at one time, which Prewitt did not contest because he owed him money for the truck. The sale of a thing belonging to another is null and does not convey ownership. La.C.C. art. 2452 (1870) (in effect at the time the transaction occurred).[7]
Therefore, the trial court was clearly wrong in finding that no sale of the vehicle was intended or perfected to Prewitt, that the parties contemplated a sale to Thornton, and that Thornton was only allowing Prewitt to use the truck. Nothing in the record even suggests that Richard intended to sell the vehicle to Thornton, or that Thornton ever perfected any legal as opposed to "record" ownership which he could have transferred to Prewitt.

Was there coverage?
A review of the record shows Prewitt went to Marathon Insurance Company and purchased a non-owner policy of insurance. This was the policy which he showed to Thornton in order to get the truck back. For whatever reason, Thornton did not see when he looked at Prewitt's "proof" of insurance that the policy was a non-owner policy.[8]
*445 Starr Daigre, the employee at the insurance company who sold the policy to Prewitt, testified that she remembered selling the policy because she sells so few non-owner policies every year. She recalled that Prewitt came in specifically asking for a non-owner policy and that he needed an "SR 22" in order to get his license back.[9] She specifically asked him if he owned a vehicle, and he told her he did not. She did not investigate the matter further because she was under the impression that his primary reason for purchasing the policy was to get his license back. She testified that an owner policy possibly and "probably" would have cost less than the one he bought, but she did not compute the price because he clearly stated he wanted a non-owner policy and also stated he did not own a vehicle. She then sold him a non-owner policy of insurance.
The trial court found that the insurer intended to provide coverage for the 1978 pickup truck. Nowhere in the record is this conclusion substantiated. Daigre did not even know the pickup truck existed. She did not know any of the facts surrounding the "purchase" of the vehicle; she did not even know how Prewitt had arrived at her office. Therefore, the trial court was clearly wrong in finding an intent to insure a vehicle which the insurer did not know existed.
Plaintiffs contend the non-owner policy, as interpreted by Louisiana Indemnity, violates public policy and law because it fails to provide coverage for an injured party. An insurance policy does not derogate from the laws of this state simply because under the circumstances no coverage is afforded under the policy. Non-owner policies are allowed by the law of this state. Louisiana Revised Statute 32:900(C) provides that an
operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him....
(Emphasis added.) Coverage is excluded for this accident under this policy because Prewitt was driving a vehicle he owned, not because the policy did not insure anything.
For the foregoing reasons, in appeal number 95-CA-0315, we reverse and render judgment in favor of defendant, Louisiana Indemnity Company, dismissing plaintiffs Donald Biggs and Diette Biggs' suit against it. In appeal number 95-CA-0316, we reverse and render judgment in favor of defendant Louisiana Indemnity Company, dismissing plaintiff Allstate Insurance Company's suit against it.[10] All costs of trial are assessed against defendant John D. Prewitt, Jr. All costs of these consolidated appeals are to be divided equally between the Biggs and Allstate.
REVERSED AND RENDERED.
NOTES
[1] The petition incorrectly refers to "Louisiana Indemnity Insurance Company."
[2] Allstate paid under its collision insurance coverage to the Biggs, then filed a subrogation suit in Baton Rouge City Court for reimbursement of the sum paid to the Biggs under its policy. This case was subsequently transferred to the Nineteenth Judicial District Court.
[3] Diette and Donald Biggs and Allstate Insurance Company are hereinafter collectively referred to as "plaintiffs."
[4] Prewitt did not file a brief; however, a letter was filed in the record aligning Prewitt with plaintiffs as an appellee and adopting the brief filed on behalf of plaintiffs.
[5] The sales articles were revised by La. Acts 1993, No. 841, section 1, effective January 1, 1995. The new article 2456 provides:

Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid.
[6] Thornton stated in his deposition:

Q: [I]n [the first] transaction, you were only loaning money to Mr. Prewitt?
A: That's right.
Q: Now, how did you acquire the truck if you were only loaning money?
A: All right. The truck had transmission problems. And he was on Toledo Bend, and it broke down on him. He left it on the side of the road. I never got a penny of my $700 in the truck, so I went and got the truck off of the side of the road. I went to Arthur at that time and got the title, the man that had it originally, and I transferred it to my name at that time. He signed the title, and I transferred it to my name. I had the truck fixed. And
Q: You, in effect, repossessed the truck?
A: I repossessed the truck. It was for what I had against it.
[7] New article 2452 states "the sale of a thing belonging to another does not convey ownership." In spite of its different language, the official comments indicate it does not change the law. See La.C.C. art. 2452, revision comment (a).
[8] Not that it would have made any difference in light of our finding that Prewitt already owned the vehicle, notwithstanding Thornton's conditions.
[9] Prewitt had previously been issued a ticket for driving while intoxicated. An SR 22 is a certificate of financial responsibility showing that an individual has insurance and is required by the state in order to have one's driver's license returned.
[10] The judgment is final as to John D. Prewitt, Jr. Prewitt stipulated to liability and, thus, could not appeal.