hCARAWAY, Judge.
Marcellus Johnson, plaintiff, and Percy White, defendant, were involved in a car accident on January 26, 1995. Mr. Johnson filed suit against Mr. White and the insurer of the vehicle, Safeway Insurance Company. Mr. White claimed he purchased and obtained possession of the vehicle, a 1981 Lincoln Continental, from Marilyn J. Williams prior to the accident, but Ms. Williams retained title to the vehicle until some time after the accident. Mr. White also claimed he paid for the insurance on the vehicle in Ms. Williams name. Safeway denied coverage, claiming that Mr. White was a non-permissive user of the vehicle. Finding that Ms. Williams apparently gave permission to drive the vehicle to her boyfriend, M.L. Robinson, who in turn apparently gave permission to Mr. White to use the vehicle, the trial court found coverage. Safeway appeals. We reverse.

Facts

On January 26, 1995, Mr. Johnson was in the left-hand turn lane on Mansfield Road and 70th Street in Shreveport, Louisiana. The light was either red or had just turned green when Mr. White, driving the 1981 Lincoln Continental, rear-ended Mr. Johnson. There is no dispute that Mr. White was the cause of the accident nor is there any dispute concerning the amount of damages incurred by Mr. Johnson. The issue is whether Mr. *1224 White had the permission of Marilyn Williams, the purported owner and named insured, to use the Lincoln Continental.
Prior to the trial, the parties stipulated that if the officer who investigated the accident was called he would testify that there were no broken windows in the vehicle Mr. White was driving and there was no sign that the vehicle had been “hot-wired.” Furthermore, the officer would have testified that Mr. White had the keys to the car and that there was no report of the car being stolen or missing.
RPIaintiff called Mr. White who testified that he had purchased and obtained possession of the car a month or more prior to the accident, initially paying half of the purchase price. He said Ms. Williams retained title to the vehicle, but he had possession of the vehicle prior to the accident. His testimony indicates that at the time of his second and final payment, he also paid Ms. Williams and Millie Robinson[1] to purchase insurance for the car stating that they would not let him drive it without insurance while the car remained in Ms. Williams’ name.[2] The Safeway Insurance Company policy reflects that it was last issued in the name of Ms. Williams for a policy period from January 10, 1995 to February 10, 1995. Mr. White testified that at that time, Ms. Williams and Millie Robinson took the vehicle to get the insurance and then returned the vehicle to him with an insurance card.
At the time of the accident, Mr. White was “just riding” around town with a companion after he and the companion had completed a minor repair to the car’s lights. In his words, “It was my car, it was just still in her name.” He asserted that at the time of the accident, Ms. Williams had no key to the vehicle.
Mr. White testified that after the accident, before Ms. Williams would transfer the title to his name, she required him to make a statement to the insurance company that he did not have her permission to use the car at the time of the accident. He said he made this statement to the company over the telephone. There was no other corroborating evidence that this statement was ever made to the insurance company. The title shows that Mr. White acquired the car on February 22,1995.
laMs. Williams testified that she owned the Lincoln Continental at the time of the accident. Although she testified that she knew Mr. White through her boyfriend, M.L. Robinson, and that Robinson had later arranged the sale of the vehicle to White after the accident, she did not state that she was acquainted with White prior to the accident. She stated that a few days prior to the accident she had left the vehicle at the home of ‘Willie” to have the brakes repaired. She said that she did not know why Percy White was driving the car on the day of the accident, and that he had never asked her permission to drive the car. When asked how much she later received for the vehicle, she did not know, stating that her fiancé, Mr. Robinson, sold the vehicle after the accident to Mr. White.
After Ms. Williams gave the above testimony as a witness for the defense, the plaintiff did not cross examine her. Her testimony does not reveal whether she ever was acquainted with Mr. White prior to the accident or whether she had previously given permission to Robinson to drive or deal with the vehicle in any manner. M.L. Robinson did not testify at trial.
After stating that the testimony of Mr. White would be disregarded “all together in terms of believing his version of what took place,” the trial court, in its oral ruling, addressed the crucial issue of the insurance coverage, as follows:
"... Either expressly or tacitly the Court is persuaded from the totality of the evidence that Ms. Williams relied upon her then boyfriend to not only see that the car *1225 was repaired or handle the insurance, but also to arrange the selling of this automobile. And apparently all of that was done with Ms. Williams’ knowledge and consent.
And when I say knowledge, I don’t mean active knowledge that she knew the exact date, when, where or what, but she knew that the car was going to be repaired at some point. She knew Mr. Robinson had access to the car, she gave him access to the car. And ultimately she knew that the ear was sold to Mr. White.
Given all these facts, the Court simply is saying that at the time of the accident, January 26, 1995, the automobile was owned by Ms. Williams, she authorized and gave Mr. White permission to Ruse the car through her friend or agent, either expressly or tacitly, and I’m speaking about Mr. Robinson. So at the time that Mr. White had the automobile, he had it with the proper authorization and permission and consent to use.”
Based on this ruling, the trial court granted judgment in favor of plaintiffs and against Safeway Insurance in the total amount- of $11,273.14. Safeway Insurance appeals this judgment.

Discussion

Safeway Insurance argues on appeal that the trial court committed manifest error in holding that Mr. White had the implied permission of Ms. Williams to operate the car at the time of the accident. Relying on the omnibus clause in the insurance policy issued to Ms. Williams, Safeway Insurance asserts that there is no coverage under this policy since the evidence does not show that Mr. White had the expressed or implied permission of the named insured to operate the vehicle.[3]
A plaintiff who seeks to establish coverage under the omnibus clause of an automobile liability policy must prove that the vehicle was being used with the express or implied permission of the named insured. Perkins v. McDow, 615 So.2d 312 (La.1993). The fact of permission must be proved by a preponderance of the evidence without the aid of any presumptions. Manzella v. Doe, 94-2854 (La. 12/8/95), 664 So.2d 398; Norton v. Lewis, 623 So.2d 874 (La.1993). Generally, implied permission “arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle.” Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986); and Manzella, supra.
A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State ┴5Through Department of Transportation and Development, 617 So.2d 880 (La.1993). In - order for an appellate court to reverse the trial court’s finding of fact, it must find 1) that a reasonable factual basis does not exist for the finding of the trial court, and 2) that the record establishes that the finding is clearly wrong. Stobart, supra.
Although the testimony of Mr. White and Ms. Williams is at odds and the trial judge stated that he disregarded Mr. White’s assertions, it was only in the testimony of Mr. White that Robinson was said to be involved in any way with the vehicle prior to the accident. Only Mr. White stated that Robinson and Williams were jointly involved with receiving money for the vehicle and for the insurance prior to the accident. Though Ms. Williams indicated that she was living with Robinson during the time period in question, any inference from that relationship that Robinson could authorize White’s use of the vehicle on the day of the accident goes against Ms. Williams’ other testimony that she had delivered the vehicle to Willie for repairs two or three days before the accident.[4] Thus, in our opinion, the trial court's ultimate conclusion that Robinson had “ac *1226 cess to the car” prior to the accident and “gave Mr. White permission to use the car” must rest primarily, if not exclusively, on Mr. White’s testimony, the only witness who the plaintiff presented in support of the claim regarding insurance coverage. Nevertheless, Mr. White’s testimony described Robinson’s actions with the vehicle prior to the accident only in connection with the sale of the vehicle. Any acceptance of Mr. White’s testimony regarding the facts of Robinson’s involvement necessarily entails Robinsons’ alleged sale of the vehicle.
IgAs to the alleged sale of the vehicle, the trial court relied upon the information on the Louisiana certificate of title as defeating the possibility of a sale prior to February 22, 1996, which was the “Date Acquired,” listed in the title. However, the First Circuit Court of Appeal recently summarized the law regarding the sale of an automobile in a similar setting involving the issue of insurance coverage in Biggs v. Prewitt, 95-0315 (La.App. 1st Cir. 10/6/95), 669 So.2d 441, 443, indicating, as follows, that the title information does not necessarily control:
“The three essential elements of a sale are thing, price, and consent. There must be a meeting of the minds of the parties as to the object to be sold and the price. Sherman v. State Farm Mut. Auto. Ins. Co., 413 So.2d 644, 646 (La.App. 1st Cir.1982). Depending on the circumstances of the case, consent of the parties to buy and sell a specific item at a reasonable price can be implied. Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171, 1173 (La.1980). The jurisprudence of this state does not require that the certificate of title to a vehicle be transferred in order for the sale to be a valid one. Wright v. Barnes, 541 So.2d 977 (La.App. 2d Cir.1989); Shanks v. Callahan, 232 So.2d 306, 308 (La.App. 1st Cir.1969). Furthermore, sale of a vehicle is not affected by non-compliance with the Vehicle Certificate of Title Law, La. R.S. 32:701-738. Neither does the law require that an agreement to sell a motor vehicle be notarized or even reduced to writing.”
In Scott v. Continental Insurance Company, 259 So.2d 391 (La.App. 2d Cir.1972), this court found that the insurance policy of a vendor involved in a credit sale of a vehicle prior to issuance of title did not provide coverage to the vendee, as a permissive user of the vehicle. Similarly, the Safeway policy in this case required that the insured, Ms. Williams, have ownership of the 1981 Lincoln in order to permit the vehicle’s use by another. Acceptance of Mr. White’s statements regarding Robinson’s actions with the vehicle prior to the accident therefore demonstrates that Ms. Williams’ ownership of the vehicle and coverage under the policy had ended.
In summary, relying upon Ms. Williams’ testimony alone, there is insufficient evidence to support the trial court’s conclusion that M.L. Robinson pacted as Ms. Williams’ agent and gave permission to Mr. White to drive Ms. Williams’ vehicle on the day of the accident. If Mr. White’s testimony is given any weight to support the view that Robinson dealt with the vehicle on Ms. Williams’ behalf before the accident, that testimony indicates that the vehicle had been sold to Mr. White. Under either view of the conflicting testimony, there is no coverage which provides for Mr. White’s negligent operation of the vehicle.

Conclusion

For these reasons, we reverse the judgment of the trial court in favor of the plaintiff, Marcellus Johnson, and his wife, and render judgment in favor of Safeway Insurance Company dismissing the claim against it in this matter.
REVERSED AND RENDERED.

. Mr. White’s testimony refers to Millie Robinson, while Ms. Williams testified that her ex-boyfriend was named M.L. Robinson. Though never clarified by the questioning, Millie and M.L. appear to be one and the same person.

. It is unclear from Mr. White’s testimony why the motor vehicle title was not then transferred to him to preclude any need of this last insurance transaction since his testimony indicated that his final installment had been made.

. The applicable policy provision provides:
"Persons Insured. The following are insured under Part I:
(a) With respect to the owned automobile,
(1) the named insured,
(2) any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission.”

. As with many unexamined portions of the testimony, Ms. Williams was never asked whether she confronted "Willie,” the repairman, about the vehicle's release to another person, and Willie did not testify.